Russell J. Klick and Gladys P. Klick, His Wife, *v.* Commonwealth of Pennsylvania, Department of Transportation.

Commonwealth of Pennsylvania, Appellant.

628

Argued June 5, 1975, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*William D. Miller,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellant.

*H. Joseph Hepford,* with him *Hepford, Zimmerman & Swartz,* for appellees.

OPINION BY Judge CRUMLISH, JR., August 4, 1975:

This is an eminent domain case commenced by the filing of a petition for appointment of viewers on Sep-

tember 13, 1971, by Russell J. Klick and Gladys P. Klick, his wife (Condemnees), Appellees herein, naming the Commonwealth of Pennsylvania (Commonwealth) as condemnor. The Court of Common Pleas of Dauphin County appointed viewers and following a site view of the premises and hearing, the viewers' report was filed awarding Russell J. Klick $95,075.00 for a tract commonly referred to as the "Hammaker tract," and $12,000.00 to Russell and Gladys Klick for lands commonly referred to as the "Klick tract."

Appeals followed the award in which Condemnees appealed the "Klick tract" determination ($12,000.00) while the Commonwealth appealed the "Hammaker tract" award ($95,075.00). Following trial, a jury verdict was returned in the amounts of $100,000.00 for the Klick tract and $120,000.00 for the Hammaker tract. Motion for new trial by the Commonwealth was denied below, hence this appeal.

It is well settled that we will not disturb a lower court's determination of a motion for new trial absent a manifest abuse of discretion, or a clear error of law which affected the outcome of the case. *First Christian Church of Turtle Creek v. Redevelopment Authority of Allegheny County*, 15 Pa. Commonwealth Ct. 9, 324 A. 2d 821 (1974) ; *Department of Transportation v. Bellas*, 14 Pa. Commonwealth Ct. 293, 321 A. 2d 418 (1974) ; *Department of Transportation v. Lutz*, 14 Pa. Commonwealth Ct. 448, 322 A. 2d 800 (1974). This being so, we turn to the eight allegations of error set forth by the Commonwealth.

1. Did the trial court err in refusing to allow testimony of the selling price of the condemned property?

2. Did the court judge err in allowing into evidence as a comparable sale, a sale to a condemning authority?

3. Did the trial court err in allowing the condemnees' appraisers to give their valuation opinions before a sufficient foundation had been laid and in improperly ruling on comparable sales?

4. Did the trial court err in its rulings on cross-examination?

5. Was the verdict on the Klick tract excessive?

6. Did the trial court err in refusing to grant a mistrial or to strike the valuation testimony of the owner?

7. Did the trial court err in refusing to allow a negative inference from a failure to call appraisers who had appraised the property for condemnation purposes?

8. Did the trial court err in allowing testimony by an appraiser where there was a failure to comply with the notification provisions of the Eminent Domain Code?

### I. Refusal to Allow Testimony as to Purchase Price of the Condemned Property

The law of Pennsylvania has always permitted cross-examination of the condemnee with respect to his purchase price of the condemned land *provided that condemnee's purchase date was not too remote in time. Kelley v. Allegheny County Redevelopment Authority,* 407 Pa. 415, 180 A. 2d 39 (1962); *Berger v. Public Parking Authority of Pittsburgh,* 380 Pa. 19, 109 A. 2d 709 (1954). Prior to the enactment of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. §1-101 et seq., this evidence was admissible as to the condemnees' credibility. But, with the enactment of Section 705(2)(i) of the Code, 26 P.S. §1-705(2)(i), such evidence became admissible, either via direct or cross-examination, not only for impeachment purposes, but also for evidence of value. *See* Comment-Joint State Government Commission to Section 705, 26 P.S. §1-705 (subdivision (2)(i)); Snitzer, Eminent Domain §705 (2)(i)—2.4.

Thus, the question narrows to whether the court below "manifestly" abused its discretion by refusing to allow cross-examination of condemnee with respect to the original price paid for the condemned parcel when that purchase occurred some five years prior to the condemnation. Our appellate courts have struggled with the re-

moteness problem before. If any common thread can be derived from these cases, it is the following: Evidence of condemnees' purchase price has been held admissible, and not too remote, if the sale was from three to seven years prior to the condemnation,[1] while evidence of purchase price resulting from a condemnee's purchase of nine or more years prior has been held inadmissible.[2]

It would be an oversimplification, however, to say that because we are here dealing with a five year period, which falls within the bounds of other cases where such a period has been held to be not too remote, that we can ipso facto conclude that the lower court erred when it excluded cross-examination of purchase price of the Hammaker tract. The court below is vested with broad discretion in this area, and we accept the explanation of that court when it stated that the evidence was excluded because of: "1) the very real inflation of real estate values in the area, and 2) the changing character of the neighborhood in the interval between the purchase and the condemnation." Clearly, the purpose behind the remoteness rule is to exclude testimony, which, because of its age would tend not to be reflective of current values. Most assuredly, viewing the interval occurring between the purchase and the condemnation is a consideration for a trial court, but, of equal or greater importance is the possible change occurring during that interval. The court

---

1. *Buehler v. Commonwealth*, 407 Pa. 330, 180 A. 2d 898 (1962) (four years); *Kelley v. Allegheny County Redevelopment Authority*, 407 Pa. 415, 180 A. 2d 39 (1962) (six years); *Lutz v. Allegheny County*, 327 Pa. 587, 195 A. 1 (1937) (seven years); *Rea v. Pittsburgh and Connellsville Railroad Company*, 229 Pa. 106, 78 A. 73 (1910) (three years). In our decision in *Lewis v. Urban Redevelopment Authority*, 5 Pa. Commonwealth Ct. 176, 289 A. 2d 774 (1972), we hold that a five year period was not too remote.

2. *Young v. Upper Yoder Township School District*, 383 Pa. 320, 118 A. 2d 440 (1955) (nine years); *Davis v. Pennsylvania R.R. Company*, 215 Pa. 581, 64 A. 774 (1906) (seventeen years).

below correctly perceived this, and as such, in no way manifestly abused its discretion. *Commonwealth v. Fox,* 16 Pa. Commonwealth Ct. 23, 328 A. 2d 872 (1974).

## II.  Sale to a Condemning Authority as a Comparable Sale

In a long line of decisional law, the rule has emerged that the price paid by a condemnor of adjoining, nearby or similar lands is inadmissible. *See Scavo v. Commonwealth of Pennsylvania, Department of Highways,* 439 Pa. 233, 266 A. 2d 759 (1970) ; *Community Housing Services, Inc. v. Pittsburgh Urban Redevelopment Authority,* 435 Pa. 344, 253 A. 2d 260 (1969) ; *Lutz v. Allegheny County, supra; Pennsylvania Schuylkill Valley R.R. Company v. Ziemer,* 124 Pa. 560 (1889); *Hays v. Risher,* 32 Pa. 169 (1858) ; *Patterson v. County of Allegheny,* 15 Pa. Commonwealth Ct. 228, 325 A. 2d 484 (1972). Underlying this is the rationale ably expressed in *Community Housing Services* by Justice POMEROY :

> "Sales to a condemnor of properties which it could, and if necessary would, acquire by condemnation are not, in my judgment, sales on the open market between a willing seller and a willing buyer. They involve an ingredient of compulsion on the part of the seller that *might* make the 'sales price' too low; there may be an ingredient of anxiety for speedy acquisition or some other factor operating in the mind of the Authority which would place the 'sales price' on the high side of fair market value. The fact is that the parties are not only buying and selling real estate; they are also settling a potential law suit, with all the elements of time, trouble, expense, and worry that would be involved. The properties may indeed be comparable, but for one reason or another the transactions may not be, and the so-called 'sales price' may be higher or lower than if no condemnation were involved. To admit such testimony would invite side excursions into all the other related factors; such

collateral matters would unduly complicate and delay the trial. For these and other reasons contained in the opinion of the lower court, I see no reason to depart from the so-called 'exclusionary rule' which has long been the law in Pennsylvania, and represents the majority view in the United States. See Nichols on Eminent Domain (3d Ed. 1967), §§21-33; Snitzer, Pennsylvania Eminent Domain (1965), §705(1)2.11." 435 Pa. at 349-50, 253 A. 2d at 262. (Emphasis in original.) (POMEROY, J., Concurring)

Appellee urges, and the court below so found, that notwithstanding the possible error of admitting this testimony, it must be classed as harmless error. We agree because, 1) the record is devoid of evidence showing the sale was to a condemnor, and 2) the price quoted per acre was next to the lowest of the seven comparable sales cited and is, in reality, beneficial to the Commonwealth. This rule is projected to protect the condemnee from having imposed upon him an unreasonably low comparable sales estimate resulting from anxiety or a forced sale situation. As stated by the court below ". . . reference to this sale can only be viewed as beneficial to the Commonwealth and we see no prejudice whatever arising from it." Reversible error proclaimed where the testimony evolved really favored the objecting party is a circumvention of the rule.

### III. Improper Foundation for Condemnee's Appraiser

Two questions are here before us, *i.e.*, 1) the sufficiency of the foundation laid prior to the Condemnee's appraiser's valuation, and 2) the propriety of the ruling on judicially comparable sales. As we understand the Commonwealth's argument, it is asserted that prior to giving a valuation, a foundation of comparable sales should have been laid. We agree with the court below that it would, indeed, have been more orderly to make such a presentation, but the Code in no way mandates

such a procedure. A review of the record shows no error in this regard. Also challenged is the eventual ruling on the property of comparable sales. It is contended that the trial judge erred in permitting the condemnee to refrain from presenting comparable sales on direct examination, thus, permitting their introduction on cross-examination *when they must be accepted by the condemnor and jury.* The short answer to this is that Section 705(2), 26 P.S. §1-705(2) specifically contemplates the introduction of comparable sales evidence on either direct *or* cross-examination.[3] Neither can we accept the argument that the condemnor is helpless to attack such testimony on cross-examination when it is he who controls the questioning, and stretches the bounds of credibility to say that a jury *must accept* any testimony in this situation.

## IV.   Rulings on Cross-Examination

Initially, the Commonwealth alleges error in the court's admission of non-responsive testimony and the failure to strike them from the record. That portion of the record pertaining to the alleged non-responsive testimony is found in the cross-examination of Mr. Klick.[4]

---

3.   Section 1-705(2) states: "A qualified valuation expert [or condemnee] may testify on direct *or* cross-examination as to the valuation of the property on a comparable market value. . . ." (Emphasis added.)

4.   "Q.   Now with regard to the Hammaker tract, do you recall testifying to damages of $174,185 under oath at the Board of View in 1972?

"A.   I guess it was in that neighborhood. I don't know for sure.

"Q.   And now you are testifying to a $185,000 which is approximately $11,000 in excess of your prior figure. Is that correct?

"A.   It could be, with reservations. I'd like to make a statement on that."

"Q.   You testified under oath, didn't you?

"A.   Yes, but since that I have become more knowledgeable about the severed portion.

"Q.   You were knowledgeable about real estate, were you not,

The thrust of the objection before us is that this testimony was not removed from the consideration of the jury, which in end result prejudiced the Commonwealth. It is quite apparent from the record that the judge's admonishment relating to this testimony nullified any possible prejudice this collateral matter might have had upon the finders of fact.

Second, the Commonwealth urges us to find reversible error in the testimony of condemnee's appraiser, Mr. Mergenthler, in the cross examination as to purchase price of the northeastern tip of the Klick tract in 1958, and sales of property two-hundred feet from the property here condemned, which sales occurred in 1971. In response to these assertions, we must return to the *Lewis v. Urban Redevelopment Authority of Pittsburgh, supra,* line of cases which vest in the trial judge broad discretion on remoteness and relevance. The court below reasoned that neither transaction sufficiently related to the date of the taking to be relevant, and further, that the jury had sufficient testimony at that stage of the

---

Mr. Klick? At least since you got your broker's license in when?

"A. Yes, but since our testimony in September, Lower Paxton Township changed their zoning from approximately sixteen units per acre to eight or nine, and at that time they had more density per acre, which in the meantime this passed fall lowered the boundary of my ground—

"MR. MILLER: Your Honor, I would like to have this stricken as immaterial.

"A. —because the ground is less valuable now because it cannot be used. It could have been used much better a couple years ago because the average density is greater.

"THE COURT: I want to interrupt Mr. Klick at this moment and tell both Mr. Klick and the jury, ladies and gentlemen, that the damages that we are dealing with here are those that occurred to this property in 1967, and I think you must limit your questions, Mr. Miller, or frame your questions in such a way that the witness understands that it is the value of this property before and after the taking in December of 1967 that we are concerned with and not what has transpired since 1972 or anything like that. Try to frame your questions so the witness isn't misled."

proceeding presented by both parties, for the jury to rationally determine the comparable sales issue. In these circumstances, we hesitate to find reversible error in the form of manifest abuse of discretion.

### V.   Excessive Verdict—Klick Tract.

Section 602 (a) of the Eminent Domain Code, 26 P.S. §1-602 (a) provides that the measure of damage consists of "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby . . . ." In *Lewis v. Urban Redevelopment Authority of Pittsburgh, supra,* we advanced the longstanding rule that it is within the jury's province to weigh the credibility of the valuation witnesses' testimony in determining the value of the land. Of course, there will be discrepancies between the valuations of the parrying parties. The jury's function is to determine the credible from the incredible. Mr. Klick testified that damages to the Klick tract were $117,000.00, his expert set the amount at $104,000.00. The award was $100,000.00 for the taking of the 7.63 acres of a 171 acre tract.

The Commonwealth urgently moves us to consider the variance between the verdict and the Viewers' opinions. While the Viewers' award is a factor, it in no way controls or disposes with finality. Thus, the question is whether the jury could have reasonably found, on the record, the amount it set. If the jury believed the condemnees and his expert's testimony, the award of $100,-000.00 can be justified. Since the court below did not exercise remittitur, we find no reason to override the award.

For whatever value it may have, we observe the Commonwealth's argument that the great variance in per acre price ($100,000.00 for 7.63 acres of the Klick 171 acre tract as opposed to $120,000.00 for 38 acres of the

Hammaker 70 acre tract) which was awarded on its face clearly shows an excessive verdict at least as it relates to the Klick tract. The court below correctly cited the law of the Code where it found that in determining valuation, the value of what is taken as well as the effective use and value of the remaining lands is to be considered when measuring the damages. As land is unique, no two parcels can have the same value, particularly in two disparate uses.

Condemnees' case on the Klick tract proceeded on the assertion that the remaining land would be irreparably harmed since its development potential would be removed. The Viewers were impressed with this argument less than the jury; hence the difference in their result.

### VI. Motion to Strike Valuation Testimony— Motion for Mistrial

The Commonwealth summarizes this extensive argument by stating that its motion to strike valuation testimony of Russell Klick, its motion for a mistrial and, the request for point for charge regarding contrary valuation testimony by Russell Klick at the Viewers' hearing and trial should all have been granted because 1) the valuation testimony was based on an improper element, to wit, that a prospective purchase had fallen through, 2) the changed testimony surprised the Commonwealth, and 3) the valuation given by Russell Klick before the Board of View was binding and conclusive.

The nub of this objection is that Russel Klick testified before the Board of View that the measure of damages totaled $52,700.00 but at trial de novo he estimated compensation due to be $117,000.00. He explained the differential when he said a potential buyer was lost because of the condemnation proceedings.

As to the second and third reasons for error, namely, surprise and conclusiveness of the testimony before the Viewers, surprise was not pleaded at trial, and proceedings before the Board of View are not conclusive. The

more difficult problem is posed by the nature of the changed circumstances in the instant case. Here, the changed testimony was based on the collapse of a prospect to purchase the property. Such is speculative and remote, especially where the purchasers are without face or identity. Notwithstanding this fact, other testimony by condemnee's valuation experts placed the value of the condemned property in the same general range as that put forward by condemnee. The Commonwealth undoubtedly was harmed by condemnee's testimony, but not to that degree necessary to find reversible error.

## VII. Refusal to Permit an Adverse Inference

This objection of the Commonwealth is based on the fact that the trial judge refused Commonwealth's point for charge which asked the jury to draw an adverse inference with respect to the failure of the condemnees to call two appraisal witnesses. Condemnees counter by saying that the testimony would have been repetitive and that the two were known to the Commonwealth and were, therefore, available to them.

We have recently reviewed *in extensio* this precise question in *Lutsko v. Department of Transportation*, 13 Pa. Commonwealth Ct. 150, 318 A.2d 361 (1974), where we said that such an inference will arise upon failure to call a valuation witness. We also referred to the exception to the rule, *i.e.*, where the witness is equally available to both parties, the inference is unjustified. Admittedly, we are in a difficult position as the lower court in its opinion merely asserts that the Commonwealth knew of or at least had availability to these witnesses, while the Commonwealth asserts that it first learned of these witnesses at trial during a cross-examination. Reviewing that portion of the record cited by the Commonwealth in its brief, we are unable to find a basis for its assertion. However, we are likewise unable to find a basis for the lower court's position. Perplexing as this dilemma may seem, the short answer is that the

Commonwealth has not shown how this error, if indeed error, caused sufficient injury to constitute reversible error. As such, we reject this argument.

VIII. Failure to Comply with Section 703 (2)

Section 703 (2) of the Code, 26 P.S. §1-703 (2) states:

"If any valuation expert who has not previously testified before the viewers is to testify, the party calling him must disclose his name and serve a statement of his valuation of the property before and after the condemnation and his opinion of the highest and best use of the property before the condemnation and of any part thereof remaining after the condemnation, on the opposing party at least ten days before the commencement of the trial."

The Commonwealth urges us to find error in allowing Mr. Wagner, a condemnee valuation witness, to testify in that the Section 703 (2) notice that he would testify did not contain his opinion as to the highest and best use as required by the statute. We agree with the court below, after review of this notice, that notwithstanding the lack of express opinion on highest and best use, the use of the phrases development land and residence (or county residence) gave sufficient indication of this witnesses' view of the highest use for the property We do not condone this notice; rather to the contrary, it seems that proper draftsmanship would include a paragraph stating the opinion. Review of this notice, however, did give the Commonwealth an understanding of this expert's testimony.[5] This is the purpose of the section[6] and as the purpose was met, no reversible error ensued.

Consistent with the foregoing, the order of the Court of Common Pleas is affirmed.

---

5. The notice gave an extensive summary of values of the area before and after and subdivided each tract into the following subcaptions: 1) Effective area, 2) County Residence, 3) PP & L Right-of-Way, and 4) Development Area.

6. See the Joint State Government Commission Comment to Section 703 (2).