John Kopec and Casper Kopec, Appellants *v.* Redevelopment Authority of the City of Hazleton, Appellee.

Submitted on briefs, October 8, 1976, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Robert J. Gillespie*, with him *Bigelow, Gillespie, LaRocca and Cooper*, for appellants.

*Anthony P. Sidari*, with him *Thomas L. Kennedy*, for appellee.

OPINION BY JUDGE MENCER, December 13, 1976:

Casper Kopec and the estate of John Kopec (condemnees) appealed from an order of the Court of Common Pleas of Luzerne County dismissing their motion for a new trial in an eminent domain case. The case began on January 31, 1969, when the Redevelopment Authority of the City of Hazleton (condemnor) filed a declaration of taking of condemnees' premises. The case proceeded to jury trial when the condemnor appealed from the report of the board of viewers awarding condemnees $54,000 for the fair market value of the premises and $10,000 as business dislocation expenses for a boarding house.[1]

During the short trial in which the sole issue for the jury was the amount of compensation to be paid, Casper Kopec testified that his loss on condemnation was $90,000. On cross-examination, he testified that he had obtained his interest in the property in 1964 (less than five years before the condemnation) when he, as executor of his mother's estate, and his two brothers transferred title to himself and one brother in consideration of $2,500. Three expert witnesses also testified as to value. One, called by condemnees,

---

[1] The sum of $3,200 was also awarded as business dislocation expenses for a barbershop and shoeshine business, but condemnor did not object to this amount.

opined that at condemnation the Kopec property was worth $73,250. The other experts, called by condemnor, offered value opinions of $35,000 and $33,000, based on comparable sales. One of these experts, Philip Fitelson, testified that he had appraised the premises on May 4, 1973 and that, among several comparable sales, he had considered one made on May 16, 1973.

The jury's verdict of $40,000 for fair market value and $10,000 for business dislocation expenses prompted condemnees, on February 4, 1974, to move for a new trial. Condemnees assigned as their reasons that the verdict was against the weight of the evidence and contrary to law. They also requested leave to file additional reasons as soon as the transcribed testimony had been received from the stenographer. The lower court denied such leave and ordered argument on the motion on February 28, 1974. The dismissal of the motion on April 3, 1974 engendered this appeal.

Condemnees request this Court to grant a new trial and assign as error four actions of the lower court: (1) the denial of a continuance of the argument on the motion for a new trial until the testimony had been transcribed; (2) the admission of the testimony of Philip Fitelson which was allegedly false on its face; (3) the admission of testimony regarding the purchase price of Casper Kopec's property interest and the failure to instruct the jury that such was not evidence of fair value; and (4) the abuse of discretion in failing to grant a new trial where the jury verdict was substantially less than the viewers' award.

Initially, we note that the grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony,[2] and

---

[2] *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123 (1969) ; *Tinicum Real Estate Holding Corp. v. Department of Transportation*, 25 Pa. Com-

that, while his decision is subject to review, it will not be disturbed, absent a manifest abuse of discretion or a clear error of law which affected the outcome of the case. *Klick v. Department of Transportation*, 20 Pa. Commonwealth Ct. 627, 342 A.2d 794 (1975). Because we find neither manifest abuse of discretion nor clear errors of law which affected the outcome of the case, we affirm.

Regarding the first issue, condemnees argue that they had a right to a continuance of the argument on their motion pending transcription of the notes of testimony. In support of this proposition, they cite Section 3 of the Act of May 11, 1911, P.L. 279, *as amended*, 12 P.S. §1198.[3] The proposition is somewhat less than persuasive. The statute relied upon by condemnees merely identifies the three circumstances when notes of testimony shall be transcribed, without commenting on when the transcription shall take place or what the rights of the parties shall be pending transcription. The timing of the argument on the post-trial motion was not a matter of right but rather was a matter of discretion for the court.

In its opinion, the lower court cogently noted that the case was a simple one and that no unusual legal problems arose in the short trial. We cannot say the lower court's determination that, under these circumstances, the post-trial motion should not be delayed for want of a transcript was a manifest abuse of dis-

monwealth Ct. 47, 358 A.2d 116 (1976) ; *Lewis v. Urban Redevelopment Authority of Pittsburgh*, 5 Pa. Commonwealth Ct. 176, 289 A.2d 774 (1972).

[3] The section provides:

The official stenographer shall transcribe the notes of the evidence taken upon the trial of any case, under the following circumstances and those only : (a.) When directed by the court so to do; or (b.) when an appeal has been taken; or (c.) when he shall be paid for a copy thereof by a person requesting him to transcribe it.

cretion.[4]   Furthermore, we note that the coveted transcript apparently has failed to provide additional reasons to support a new trial—at least, condemnees have pointed to nothing in the testimony which supplements their arguments to the lower court.  It would be difficult to conclude, therefore that the denial of leave to file additional reasons after transcription affected the outcome of the case.

Condemnees' second contention is equally unconvincing.  Their apparent position is that Philip Fitelson's expert testimony was incredible as a matter of law because he stated that in his May 4, 1973 appraisal he considered a comparable sale made on May 16, 1973.  Condemnees consequently contend it was error to allow *any* of the expert's testimony to go to the jury.

In *Lewis, supra* note 2, this Court advanced the long-standing rule that it is within the *jury's* province to weigh the credibility of valuation witnesses' testimony in determining the value of land.[5]  For the trial court to usurp this function would have been a highly questionable action.  Nevertheless, avenues were open to condemnees had they considered Mr. Fitelson's testimony to be of dubious probative value.  For example, they could have subjected him to rigorous cross-examination as to how he could base an appraisal on a sale made after that appraisal,[6] or they could have

---

[4] *Cf. Redevelopment Authority of the City of Hazleton v. United Mine Workers of America,* 64 Luz. L. Reg. Reports 139 (1974) ;*see also Susquehanna Anthracite, Inc. v. Glen Alden Corp.,* 35 Pa. D. & C. 2d 461 (1964).

[5] In contrast, the court's function in regard to such testimony in question is discretionary : to determine whether comparable-sales evidence is too remote or irrelevant. *Klick, supra.* We cannot say that discretion was abused here.

[6] It must be remembered that the appraisal took place May 4, 1973, the sale was "made" May 16, 1973, and Mr. Fitelson testified on January 30, 1974. We have no problem envisioning a situation

requested a cautionary jury instruction. Significantly, condemnees followed neither approach. Accordingly, we find no manifest abuse of discretion or error of law in the admission of Philip Fitelson's testimony.

Condemnees next argue that the lower court abused its discretion in admitting, over general objection, cross-examination testimony of Casper Kopec as to the purchase price of his interest in the condemned property and in failing to instruct the jury that such testimony was not evidence of fair market value. It is noted that neither did condemnees record an exception to the allegedly objectionable instruction of the court, nor did their recitation of error in the motion for new trial touch on the omission. Therefore, the contention as to the instruction now raised need not and will not be disposed of here. *Bosniak v. Redevelopment Authority of the City of Philadelphia*, 20 Pa. Commonwealth Ct. 291, 341 A.2d 260 (1975). Additionally, we note that in *Lewis, supra* note 2, we held that it was not an abuse of discretion for a trial court to permit cross-examination as to the price paid by a cocondemnee when she and her sister purchased the property in question from themselves as coexecutrices of their mother's estate. We believe *Lewis* controls here, and therefore we find no abuse of discretion in the admission of the testimony in the instant case.

Finally, we consider condemnees' contention that the trial court erred in failing to grant new trial because the jury verdict was "substantially" less than the board of viewers' award.[7] While the award is an

in which a local broker learns the details of a local sale a mere twelve days before the transfer is consummated and relies on them provisionally for his appraisal.

[7] A distinction has been drawn between the contention that a verdict was inadequate, which usually concerns a verdict's relationship to a viewers' award, and the contention that a verdict was

important circumstance or factor to be considered when a new trial is requested either for inadequacy or excessiveness of the jury's verdict, it is not controlling.[8] Here the jury verdict was $14,000 less than the award of $54,000. Notably, however, the verdict and the award fell between condemnor's and condemnees' witnesses' testimony, which ranged from $33,000 and $35,000 to $73,250 and $90,000, respectively. These variations in value involve a question for the jury to resolve. We cannot say that the disparity in opinions, together with the result of the jury, bore no relationship to the testimony of any of the expert witnesses nor that these factors, together with the board of viewers' award, indicate the verdict was inadequate. Accordingly, we find no manifest abuse of discretion or error of law in the lower court's denial of the motion for new trial.

Order affirmed.

## ORDER

Now, this 13th day of December, 1976, the order of the Court of Common Pleas of Luzerne County dismissing condemnees' motion for a new trial is affirmed.

---

against the weight of the evidence, which usually concerns the credibility of valuation testimony. See *Springer v. Allegheny County*, 401 Pa. 557, 165 A.2d 383 (1960) ; *Tinicum, supra* note 2. While in their motion for new trial condemnees contended the latter, before this Court they appear to argue both. However, neither contention is meritorious.

[8] *Lewis, supra* note 2.