**Dubs v. Reed**

*Leo E. Gribbin, Jr.,* for plaintiff.
*Robert J. Brown,* for defendant.

BUCKINGHAM, *J.,* February 10, 1982 — In this case plaintiff recovered a jury verdict against de-

fendant in the sum of $92,000 for loss of earning capacity and $50,000 for non-economic detriment. The court molded the verdict for lost earning capacity by deducting the $15,000 in work loss benefits payable to plaintiff from the first party insurance carrier under sections 103, 203 and 205 of Pennsylvania's No-fault Motor Vehicle Insurance Act of 1974, 40 P.S. 1009.103, 109.202 and 109.205. The matter is before the court en banc on the defendant's motion for a new trial and the plaintiff's exception to the court's molding the verdict.

Plaintiff's suit against the defendant arose out of a collision between the motor vehicles they were operating. At about 9:30 p.m. on February 23, 1977 on a clear dry night plaintiff was driving her car east on East Market Street in the City of York. Market Street is one-way going east with three lanes of travel. Plaintiff was in the middle lane. Defendant was following the plaintiff in the same lane. There were several cars ahead of the plaintiff in the middle lane. As the cars arrived at the intersection of Market Street and Duke Street the signal light was green for Market Street traffic. For some unknown reason the car in front of plaintiff stopped abruptly. Plaintiff, who was watching the traffic ahead of her, was able to stop her car in time and avoid striking the car in front of her. However, defendant, who at that time had taken her eyes off of the road in front of her and was looking down at her radio, struck the rear of plaintiff's vehicle, completely demolishing it. Defendant was obviously negligent for operating her vehicle while not looking at the traffic ahead of her but the court left the issue of her negligence to the jury. However, the court ruled as a matter of law that plaintiff was not negligent and that it would have been error to submit the issue of her

negligence to the jury because she did everything she was supposed to do. She was driving at a reasonable speed, in her own lane of traffic and far enough back of the car preceding her so that she was able to stop in time to avoid hitting it.

Parenthetically, the court, we believe correctly, refused defendant's request to charge the jury that a motorist must operate his vehicle at a reasonable safe distance between his vehicle and the one ahead of him which would permit him under the circumstances to avoid a sudden and abrupt stop resulting in a collision from the rear. The reason we say that the court was correct is because it is obvious from the testimony that this is exactly what plaintiff did.

Plaintiff clearly had no time to give a signal that she was stopping because the car in front of her stopped abruptly and unexpectedly even though the light was green in favor of Market Street traffic. We had no hesitation in saying that the court's decision was correct. Correl v. Warner, 293 Pa. Super. 88, 437 A.2d 1004 (1981). It would have been error for the court to submit the plaintiff's negligence to the jury. Thomas v. Tomay, 413 Pa. 270, 196 A.2d 740 (1964). It has always been the law that when no evidence of negligence is produced, the issue of negligence may not be presented to the jury. We have been shown no authority that the No-fault Act or the Comparative Negligence Doctrine have changed this.

The collision pushed plaintiff's car into the car in front of it with such an impact that plaintiff's car was demolished. It caused plaintiff to suffer a severe whiplash injury to her cervical spine. She was treated at the hospital and released that night. She had to undergo numerous x-rays and skull tests. She immediately started to get headaches and con-

tinued to get them. They have been and are frequent and severe, lasting for an hour and up to all day. She has been and is still taking drugs and medicine for them. She was forced to wear a cervical collar from the time of the accident and still does. For two and one-half years after the accident she was in traction three times a day. Her neck still hurts when she drives and she still had difficulty turning her head. She does a great deal of driving in her work as a department store buyer.

Her injury hinders her sports activities and household work (she has married since the accident). Her doctor testified that her injury is chronic and permanent and that becuase of it she couldn't do her job as a buyer at the Bon-Ton Department Store in York. He said that she will never get better and that she suffers a 15 percent disability. Plaintiff was 26 at the time of the accident and at the time of trial on December 15, 1980 had a life expectancy of 50.6 years and a work life expectancy of 33.9 years. She still sees her doctor every two to four weeks. She testified that she could not do her job as a buyer after ten years.

Plaintiff earned $9,000 a year at the time of the accident on February 23, 1977 as a buyer at the Bon-Ton Department Store in York. She went to work in Washington, D.C. in July of 1978 as an assistant buyer for Woodward and Lothrup, a Department Store there with a starting salary of $17,000 a year. By the time of trial she had been promoted to buyer and was earning $20,000 a year. She can do her work but it is difficult for her to do it and she often has to take off from work during the day so that she can go home and rest and then complete her work at home in the evening. While it is possible for her to be promoted to be a divisional manager with the store, she could not accept the po-

sition because she is physically unable to do that type of work by virtue of her injury. This was confirmed by her doctor's testimony.

Recently, before trial there were two openings for divisional manager but she could not accept the appointment because of her injuries. As a divisional manager she could have earned $30,000 to $60,000 a year. Normally, she would have been promoted to divisional manager within four to five years from the start of her employment at Woodward and Lothrup. There is no such position as part-time buyer divisional manager. When eventually she will have to quit her job as a buyer, the only work available to her would be as part-time sales clerk at $3.50 to $4.00 an hour.

Plaintiff called an actuary who testified that her lost earning capacity resulting from her 15 percent disability and the nature of her injuries which prevented her from doing certain types of work, would result in a lost earning capacity which would vary from $319,000 to $328,804, depending upon what happened, e.g., if she did not get the divisional manager's job or if she had to quit her job as a buyer within ten years. Finally, he said if she worked her full life expectancy, with the 15 percent loss, her lost earning capacity would be $101,000.

The principle questions in this case are whether, as defendant contends, the court erred in submitting to the jury the issue of plaintiff's loss of earning capacity since she had not accrued and exhausted her work loss benefits of $15,000 under the No-fault Act and whether, as plaintiff contends, the court erred in deducting the $15,000 from the jurys' verdict for lost earning capacity. We do not believe the court erred in either respect.

Defendant must concede that before the No-fault Act, the court had to submit to the jury the question

of lost earning capacity even though the plaintiff had re-returned to work and was earning more money than before the accident. Christides v. Little, 274 Pa. Super. 343, 418 A.2d 438 (1980), Wright v. Engle, 256 Pa. Super. 321, 389 A.2d 1144 (1978). Defendant contends that the No-fault Act changed this. We disagree. There have been no Pennsylvania Appellate Court cases deciding this precise issue since the No-fault Act became effective in 1975. However, an analysis of our situation by David S. Shrager, Esq., a recognized author in the No-fault field, (The Pennsylvania No-fault Motor Vehicle Act, 1979), was furnished the court and counsel by plaintiff's counsel via a letter from him dated October 16, 1981. Mr. Shrager fully supports both of the trial courts' rulings. Here is what he says in part:

"Although I realize that you were disappointed by the court's molding of the verdict to deduct $15,000 from the verdict which included a substantial award for impairment of earning capacity, I must tell you that the court acted properly. By the same token, it is quite clear that defendant is incorrect in his view that somehow damages for future earning capacity losses cannot be awarded until no-fault benefits have been exhausted. May I share these few thoughts on the subject.

As I understand the case, plaintiff, though in fact incurring no provable wage loss current to the time of trial, did suffer injuries sufficient to permit a physician to testify that there would be in the future a 15 percent impairment of earning capacity and power. Such testimony was of course for the jury's consideration and evidently the jury concluded that the gentlemen would in the future suffer impairment of his earning power. The award for non-economic losses (general damages) was such that

clearly the jury was persuaded that the plaintiff had suffered significant injury.

The essential point which defendant has overlooked is that impairment of earning capacity is by definition, a determination that a plaintiff will suffer in the future lost income. The law has long styled this claim 'impairment of earning capacity' although a more descriptive and an occasionally used styling is 'future lost wages.' To state the matter somewhat differently, when a jury awards damages for impairment of earning capacity, it has determined that at some future point, plaintiff will not earn the same income which he would have enjoyed had he not suffered the injuries which are the subject of the litigation.

Further, it is hornbook that whether or not a plaintiff has in fact incurred any loss of income is utterly irrelevant to the question of whether he will incur such losses. Indeed, it is well settled under many cases that even if the plaintiff continues to enjoy the same or even increased income following an accident is in no way critical (though of course evidentiary) on the issue of whether he would have earned more still had it not been for his injuries. This then is the reason for the styling 'earning capacity.'

In order to place the matter in the context of the No-fault Motor Vehicle Insurance Act, it is quite clear that the definition of 'work loss' as defined in Section 103 and as quantified in accordance with Section 205, fully incorporates the notion of impairment of earning capacity. The only difference is that the No-fault Act can pay only for actual losses when they are incurred ('work loss' being defined in Section 103 as 'accrued economic detriment'). Thus, if we were to assume that plaintiff will incur (as the jury determined) a disparity in income in fu-

ture years, he will in fact be entitled to recover that disparity for at that point in time he will have suffered the work loss (the 'accrued economic detriment'). In a third-party case, the common law of course recognizes the same element of damage but the important logistic difference is that a tort claim needs to be concluded at a given point in time and fairly compensate the plaintiff for both accrued and future losses. To confirm the point, one need only examine Section 205's definition of 'probable annual income.' As you know, formulae are established for those who are employed on a full time basis, seasonal basis or have no employment history. This calculation of course depends upon the historic earnings history. However, Section 205(d) in contemplation that even in a no-fault claim, a plaintiff may recover for lost wages higher than those he was in fact earning, provides in pertinent part as follows:

'Probable annual income' means, absent a showing that it is or would be some other amount' . . .

The court's action in your case was in total accordance with Section 301 (a) (4) of the No-fault Act, both in terms of permitting the jury to consider and in thereafter molding the verdict by the sum of $15,000. The section provides:

A person remains liable for loss which is not compensated because of any limitation in accordance with section 202(a), (b), (c) or (d) of this act . . .

Section 202(b) is the provision which establishes the $15,000 work loss limit. Accordingly, the court permitted the jury to award damages for 'future work loss' but (by its molding of the verdict) only in excess of the Section 202(b) financial limit of recoverable no-fault benefits. Please note that Section 301(a) (4) does not make any reference to whether work loss (or any other type of recoverable no-fault

benefit) has in fact been paid (which is the way in which defendant is evidently interpreting the clause); rather, it provides that a person 'remains liable' for financial losses not compensated because of 'any limitation' in accordance with Section 202 (i.e., the financial limit which in your case is $15,000).

The court's view of the matter in your case is further in accord with the Supreme Court's decision in Singer v. Sheppard.* Chief Justice Jones' majority opinion makes plain that economic loss damages previously recoverable at common law are fully preserved being that part of the financial loss damage is paid on a no-fault basis; the balance in the tort claim.

Nor, as a practical matter, does defendant's view make much sense since if taken at face value, it would simply mean that if a plaintiff had in fact suffered one day's worth of lost wages, he could recover impairment of earnings capacity, but if on the other hand a plaintiff when still young and able to compensate for his injuries, attempts to work on a full time basis, he would be penalized no matter how his future economic horizons might be compromised. I expect that the analysis of the issues in your case will not be made to depend upon such technical stuff.

You might be interested in knowing that in our forthcoming supplement to the No-fault textbook, the view I have expressed herein is set forth at length and enjoyed the unanimous endorsement of the Board of Authors: In fact, it did not impress us as a difficult point. . . ."

We have no hesitation in adopting Mr. Shrager's views.

---

* 464 Pa. 387, 346 A.2d 897 (1975)

Defendant cites Werner v. Capitol Area Transit, 30 Cumberland L.J. 111 (1980) which held that where a school child was injured, the child had no claim for lost earning capacity against the tortfeasor because she was unable to allege that the first party insurance carrier had refused to pay an amount due and owing under section 202 of the No-fault Act (the work loss benefits up to $15,000.) We are not persuaded to accept this reasoning. We concur with Mr. Shrager that the legislature could not have intended, in passing the No-fault Act, to deprive a person of a claim for loss of earning capacity against the tortfeasor, simply because that person had not suffered any actual loss of earnings of up to $15,000 by the time the suit was commenced against the tortfeasor.

In any event, that same court in McCullough v. Boswell, 29 Cumberland L.J. 64 (1979), has ruled that the No-fault Act did not abolish the traditional survival action for loss of future earnings of a minor deceased victim who had never worked during her life.

Moreover, in Marryshaw v. Nationwide, 13 D.&C. 3d. 172 (1979), the court in holding a no-fault carrier liable for work loss benefits to a youngster never gainfully employed noted, that lack of gainful employment does not preclude recovery for lost earning capacity. The court said at page 177:

"The partial abolition of tort liability by the No-fault Act has the effect of conferring upon the victim the right to recover compensation directly from the insurer, without regard to fault for a specified catalog 'benefits,' but preserving to the victim the right to pursue tort liability for any rights to compensation in excess of the limits.' Section 301(a)(4) 40 P.S. § 109.301(a)(4) which provides:

'A person remains liable for loss which is not com-

pensated because of any limitation in accordance with section 202(a),(b),(c) or (d) of this Act.' "

Finally, in Allstate Insurance Company v. Heffner, 491 Pa. 447, 421 A.2d 629, (1980) the Supreme Court, quoting Shrager with approval, held the plaintiff entitled to recover under the No-fault Act both survivor's and work loss benefits, excluding the amount received under the former for the amount obtained under the latter, and cites with approval an example from Mr. Shrager's treatise whereby the excess of economic loss over decedent's recovery under no-fault must be sought in a tort action.

We reject the contention of the defendant that the jurys' verdict was excessive both for the loss of earning capacity and non-economic loss. The verdict does not shock our conscience, given the serious and permanent nature of the plaintiff's injury, her suffering and disastrous effect the injury will have on her personal and economic life in the future. The testimony of plaintiff and her witnesses was not speculative. It was specific and certain enough to support the verdict. Christides, supra. There was clearly enough evidence to permit the actuary to testify on loss of earning capacity.

Defendant argues that the court erred in refusing to charge the jury that in determining the earning capacity of plaintiff, it should consider the exact amount of income taxes on such earnings. The court was correct. Gradel v. Inouye, 491 Pa. 534, 421 A.2d 674 (1980). Norfolk and Western Railway Company v. Liepelt, 444 U.S. 490, 100 S.Ct. 775, 62 L.Et. 2d 689 (1980), cited by the defendant, is inapposite as the case arose under the Federal Employers' Liability Act and under the Act, Federal, not State law controlled, and under Federal law evidence of Federal taxes on the award was admissible.

Defendant complains because the court did not charge the jury that in determining the earning capacity of plaintiff it should consider whether or not plaintiff was married or would have a family, her expenses of maintenance such as food, lodging, commuting costs and the unemployment rate in the area where the plaintiff is employed. The defendant cites no authority for this proposition so we reject it. We consider those factors irrelevant to the ascertaining of the plaintiff's earning capacity.

Defendant contends that the court erred in not charging the jury to reduce its award to present worth. The court was correct. The present worth rule has been out since Kaczkowski v. Bolubasz, 491 Pa. 561, 421 A.2d 1027 (1980).

Finally, defendant contends that the court erred in refusing to delay argument on the case until the trial testimony was transcribed. The reason the court refused the defendant's request is because the courts are compelled to give preference wherever possible to criminal cases. The criminal case load in York County is so enormous that the court stenographers are having difficulty keeping current in that field. Moreover, there is a huge backlog in civil transcripts to be filed which are ahead of the present case. To continue the argument of this case until the transcript was filed would have been unconscionable to plaintiff. Our practice has been and still is that even in criminal cases, a defendant is not entitled to its transcript of the trial testimony prior to the argument on his post verdict motions unless it is a homicide case.

We believe that the court's decision was correct. Whether or not a transcript should be filed before argument is purely discretionary with the court where the case is not that complicated. Kopec v. Redevelopment Authority of Hazelton, 27 Pa. Commw.

515, 367 A.2d 784 (1976). The present case was not that complicated. We see no abuse of discretion in this regard.

In view of what we have said we shall enter an order dismissing the defendant's motion for a new trial and plaintiff's exception to our molding of the verdict.

## ORDER

And now, this February 10, 1982, defendant's motion for a new trial is dismissed and the exception of plaintiff to the court's molding the verdict is also dismissed. The prothonotary is directed to enter judgment on the verdict in favor of plaintiff and against defendant in the sum of $127,000 with costs of suit.

An exception is granted to both parties.