B. & K., Inc., Appellant, *v.* Commonwealth.

Argued November 11, 1959.   Before JONES, C. J.,
BELL, MUSMANNO, JONES and BOK, JJ.

*Lavere C. Senft,* with him *Cohen and Senft,* for appellant.

*Frank Edward Roda,* Assistant Attorney General,
with him *John R. Rezzolla, Jr.,* Chief Counsel, Department of Highways, and *Anne X. Alpern,* Attorney General, for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March
22, 1960:

In this eminent domain proceeding appellant claims
that the court below erred in permitting the admission
into evidence of certain testimony at the trial.

On May 21, 1953, B. & K., Inc.,[1] the appellant purchased a 57 acre tract of land situated in York County,
a tract which parallels Route 111 connecting Harrisburg and York.   On or about May 7, 1957 the Commonwealth of Pennsylvania converted Route 111 into a
"limited access" highway and, as a result thereof, the

---

[1] B. & K., Inc. is a corporation engaged in the "purchase, development, leasing and construction of real estate and improvements."

only access available to appellant's land was at the "southern extreme" of such land. The Commonwealth condemned a strip of appellant's land 1900 feet in length and 10 feet in width along this highway, i.e., that portion of the land which fronted on the highway.

On November 19, 1958, the Court of Common Pleas of York County, upon the Commonwealth's petition, appointed a board of view. From an award made by this board of view the Commonwealth appealed to the Court of Common Pleas of York County wherein a jury awarded appellant damages in the amount of $11,100. Upon the entry of judgment upon this verdict the present appeal was taken.

During the trial the Commonwealth called, as of cross-examination, John Bucher, appellant's president. Bucher was asked whether, on behalf of appellant, he had filed a capital stock tax return for 1957; and, upon an affirmative response to that question, Bucher identified the capital stock tax return particularly with reference to the figure of $59,939 set forth therein as "actual value" of the tracts of land therein contained. Bucher was then questioned concerning fourteen separate tracts of land allegedly owned by appellant; he stated that appellant only owned four tracts and part of a fifth tract of land in addition to the land presently involved. The capital stock tax return itself was not received in evidence. Such cross-examination of Bucher was over appellant's objection.

In its admission of such testimony the court below relied on *Graham Farm Land Co. v. Commonwealth,* 363 Pa. 571, 70 A. 2d 219. In our view, *Graham* does not control the present situation and must be restricted to the factual situation therein presented. In both *Graham* and the instant case it is true that the "actual value" set forth in the tax return integrated *all* the land holdings of the condemnee without distinction. In

*Graham,* however, condemnee's witnesses valued the condemned land at a figure approximately $40,000 (300%) *greater* than the "actual value" set forth in the tax return of *all* condemnee's land holdings, whereas in the instant case the condemnee's witnesses valued the condemned land at approximately $10,000 (20%) *less* than the 'actual value' of *all* condemnee's land holdings set forth in the return. Thus viewed, the presence in Graham and the absence in the instant case of any *clear* value of this return by way of impeachment becomes evident and points up the present inapplicability of *Graham.* Furthermore, unlike the present situation, the condemnee corporation in *Graham* was solely owned by one person—who had filed the return—and the tax return represented his own personal evaluation of the land holdings. The admissibility of this tax return in *Graham* as a declaration against interest affected only the person who made the return and no other person.

The cross-examination of Bucher concerning the tax return was improper. First, since the "actual value" in the tax return was *greater* than the value claimed at trial for the condemned land, *clear* probative value was lacking; second, the "actual value" given in the return made no distinction between the tracts of land—all integrated in the one return—and permitted the jury to guess and speculate on what portion of the figure the appellant had attributed to this particular tract of land; third, the cross-examination concerning the tax return affected not only the tax return declarant but all other stockholders of the corporation. Under such circumstances, the capital stock tax return was without evidentiary value and cross-examination concerning it permitted unwarranted speculation on the part of the jury.

Appellant next urges that the court below erred in permitting the introduction into evidence of the price

—$6750—paid by appellant for this land on May 21, 1953, almost four years prior to the date of condemnation. Such evidence was brought out upon the cross-examination of appellant's secretary-treasurer, who twice explained that changed conditions had caused an appreciation of values along the highway. Furthermore, the Commonwealth inquired of appellant's expert witnesses concerning the purchase price.

In *Berger v. Public Parking Authority of Pittsburgh*, 380 Pa. 19, 109 A. 2d 709, this Court sanctioned the proposition that an owner of property may be asked the price at which he offered to sell the property on a date three years and four months prior to the date of condemnation. See also: *Lutz v. Allegheny County*, 327 Pa. 587, 590, 195 A. 1; *Greenfield v. Philadelphia*, 282 Pa. 344, 127 A. 768; *Rea v. Pittsburgh & Connellsville R.R. Co.*, 229 Pa. 106, 78 A. 73; *East Brandywine and Waynesburg R.R. Co. v. Ranck*, 78 Pa. 454. Cf: *Ward v. Commonwealth*, 390 Pa. 526, 136 A. 2d 309.

Evidence as to the purchase price of land should not be admitted into evidence if the time of the purchase is too remote from the time of condemnation or if the sale of the property took place under circumstances of compulsion or possessed any element of involition on the part of the buyer or seller. The admissibility of such evidence is squarely within the discretion of the trial court and the trial court's action in admitting such evidence should not be disturbed unless such discretion was grossly abused. Our examination of this record does not indicate any abuse of discretion in this respect on the part of the trial court.

Judgment reversed.

Mr. Justice COHEN took no part in the consideration or decision of this case.