Frontage, Inc. *v.* Allegheny County, Appellant.

Argued April 30, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

Francis A. Barry, First Assistant County Solicitor, with him Maurice Louik, County Solicitor, for appellant.

Alexander Unkovic, with him William G. Boyle, and Kountz, Fry & Meyer, for appellee.

OPINION BY MR. JUSTICE EAGEN, June 28, 1962:

This is a land condemnation case wherein the condemnor appeals from the judgment below and seeks a new trial, alleging that certain trial errors resulted in an excessive award of damages for the land taken.

On November 8, 1956, the County of Allegheny condemned the land involved, consisting of 8.859 acres, for the purpose of establishing thereon air navigation and terminal facilities in connection with the Greater Pittsburgh Airport. Viewers were appointed, who awarded damages to the landowner, Frontage, Inc.,[1] in the sum of $13,150, from which award both parties appealed to the Court of Common Pleas of Allegheny County. A jury trial resulted in a verdict for Frontage in the amount of $9,523.43. The lower court refused plaintiff's motion for a new trial and, on appeal, we reversed and granted a venire facias de nova: Frontage, Inc. v. Allegheny County, 400 Pa. 249, 162 A. 2d 1 (1960).

The issue was tried the second time and the jury awarded Frontage damages in the sum of $65,840.66. From the judgment entered upon the verdict, Allegheny County appeals.

The two experts, who testified at trial on behalf of the landowner, gave their opinions of the fair market value at the time of the taking as $50,000 and $58,000, respectively. The expert, who testified on behalf of

---

[1] Hereinafter referred to as Frontage.

the county, estimated the fair market value thereof as $7,800.

Raymond G. Cummiskey was president of the corporate-claimant and, by his own admission, held title to 90% of its stock. On February 1, 1954, less than two years before the taking, Cummiskey and his wife deeded the land involved, plus an additional 2.167 acres of land in the same area, to the corporation for a consideration of $3,370, which was specifically recited in the deed.

At the second trial, the deed was offered in evidence by counsel for Frontage and admitted generally. Later on, counsel moved to amend the offer of the exhibit and limit its admission to the sole purpose of proving title. This, the court allowed. When Cummiskey testified, counsel for the appellant asked him, on cross-examination, what price had been paid for the land involved. He responded by saying that he was unable to answer because the deed to the corporation included two tracts of land for the one consideration. Counsel then attempted to ask the witness what was the price paid for the two tracts combined, but the court refused to permit the interrogation. This ruling is assigned as error.

It is the general rule that an owner of property involved in condemnation proceedings may be asked what he paid for the property if the purchase date was not too remote: *Berger v. Public Parking Authority of Pittsburgh,* 380 Pa. 19, 109 A. 2d 709 (1954). Therein, this Court held that a period of three years and four months was not too remote, and that intervening changes in the character of the neighborhood and a great increase in value of properties therein between the time of purchase and the time of taking goes only to the weight of the evidence as to the purchase price and not to its admissibility: Accord, *Lutz v. Allegheny County,* 327 Pa. 587, 195 A. 1 (1937). Again, in *B. & K., Inc. v. Commonwealth,* 398 Pa. 518, 159 A. 2d 206

(1960), this Court cited *Berger*, supra, with approval and said that the admissibility of such evidence was for the sound judicial discretion of the court.

The cross-examination should have been permitted and, under the circumstances presented, its rejection constituted an abuse of discretion. The witness, Cummiskey, was for all practical purposes the owner of Frontage, a closely held corporation. While in direct examination, he did not give any opinion as to value of the property, he certainly claimed for the taking on behalf of the corporation, a sum greatly in excess of the purchase price paid less than two years before. In *Berkley v. Jeannette*, 373 Pa. 376, 96 A. 2d 118 (1953), this Court ruled that when an owner of property offers himself as a witness at trial, he may be asked what he paid for the property, provided the acquisition was not remote and this is so whether or not he testified as to the value of the property on direct examination. We think, under the circumstances presented herein, this rule should be applied even though technically the legal title to the property was in the corporation.

The fact that the purchase price constituted payment for more land than that involved is not persuasive as to the inadmissibility of the evidence but, on the contrary, renders it all the more relevant for the purpose of impeaching the integrity of the claim. It was not admissible for the purpose of influencing, by comparison, the jury's determination of the property's value. See, *Berkley v. Jeannette,* supra. Also, if the transaction was not bona fide and the consideration paid did not truly represent the fair market value, the extenuating circumstances would be for the jury. Such evidence would go to the weight of the testimony rather than its admissibility.

The error was compounded by the trial court when after the charge, in response to an inquiry from a juror concerning the price paid for the property by the

plaintiff, the court informed the jury that this testimony was not only inadmissible, but that both parties had abandoned it.

Further, the testimony of the plaintiff's own witnesses concerning the characteristics of the land itself, clearly manifests that the verdict is excessive. At the time of the taking, the land was what is known as raw land; it was subject to a sanitary sewer easement traversing its entire length; a creek also traversed the entire length thereof; the property had no sanitary sewers; water lines extended only to adjoining tracts; the difference between the highest and lowest point on the land was approximately 45 feet; substantial expenditures would be necessary for development because of the topography and the necessity of piping and directing the creek water; and finally, zoning regulations limited construction thereon to residential-type structures.

Lastly, the verdict is more than five times that awarded by the board of viewers. While this is not controlling, it is an important factor for consideration. See, *Schuster v. Pa. Turnpike Commission*, 395 Pa. 441, 149 A. 2d 447 (1959) and *Vaughan v. Commonwealth*, 407 Pa. 189, 180 A. 2d 12 (1962). Also, the verdict even exceeds substantially the value placed on the land by plaintiff's own experts.

Judgment reversed and new trial ordered.