## Dague, Appellant, *v.* Commonwealth.

Argued March 16, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Wray G. Zelt,* with him *Alexander McIlvaine,* for appellant.

*Davis G. Yohe,* Assistant Attorney General, with him *John B. Wilson, Michael R. Deckman,* Assistant Attorneys General, *John R. Rezzolla,* Chief Counsel, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 30, 1965:

Mrs. Dague, appellant-landowner, was awarded damages of $18,200 by a Board of Viewers for a portion of her property condemned by the Commonwealth for purposes of constructing a limited access highway.

The Commonwealth appealed and at the ensuing trial, a jury returned a verdict for the appellant in the sum of $31,000, plus interest. The Commonwealth filed a motion for a new trial alleging excessiveness of the verdict. The lower Court ordered appellant to remit the amount of the verdict in excess of $18,200, the amount of the Viewers' award, or a new trial would be ordered. Appellant refused to accept the remittitur; the Court ordered a new trial and from this Order appellant took this appeal.

While the case, as we shall see, was very unusual, the question raised by this appeal boils down to this: Did the lower Court commit either a clear abuse of discretion or an error of law which controlled the outcome of the case? *Vaughan v. Commonwealth*, 407 Pa. 189, 180 A. 2d 12; *Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 472, 175 A. 2d 864.

Appellant's property consisted of a tract of farm land (on which she raised cattle and sheep), containting approximately 124 acres. On this property, there was a two-story frame, 6-room dwelling house which had no electricity, no bathroom facilities and no running water,* and a frame barn, a sheep shed and wagon shed. Appellant's property had no frontage on any public road; the only access to it was by an unpaved dirt lane approximately 18 feet wide, good enough for a jeep to traverse but difficult for an automobile. While this lane ran through the property of an adjoining landowner, appellant was entitled to use the lane as the result of an easement by necessity.

The Commonwealth, under its power of eminent domain, condemned and appropriated for the highway approximately 21.5 acres of appellant's land, which included the frame barn and wagon shed. The remaining 102.5 acres were severed by the highway into two

---

* only an outside hand pump.

tracts: (1) a 36 acre tract* which was undisturbed by the condemnation, and (2) a 66.5 acre tract which was landlocked and cut off from any approach whatever because of the limited access highway that was to be built over appellant's land.

At the trial, the witnesses for the Commonwealth—applying the before and after test—valued the property taken at from $9,300 to $10,400; appellant's witnesses' valuations ranged from $31,400 to $31,800.

In *Mazur v. Commonwealth*, 390 Pa. 148, 134 A. 2d 669, the Court pertinently stated (pages 151-152): ". . . 'While the amount as found by the Board of View is not binding in any sense upon the Court, nor is it relevant testimony in the trial of the case upon an appeal from the action of the Board of View, yet it is a fair indication of the amount of damages suffered by the land owners and on a motion for a new trial should be considered . . . .' "

Moreover, in *Chiorazzi v. Commonwealth*, 411 Pa. 397, 192 A. 2d 400, the Court aptly stated (page 400): "The award of the board of view is an important circumstance or factor to be considered when a new trial is requested either for inadequacy or excessiveness of the jury's verdict, but it is not controlling: Frontage, Inc. v. Allegheny County, 408 Pa. 165, 182 A. 2d 519; Vaughan v. Commonwealth, 407 Pa. 189, 180 A. 2d 12; Schuster v. Pennsylvania Turnpike Commission, 395 Pa. 441, 149 A. 2d 447; Mazur v. Commonwealth, 390 Pa. 148, 134 A. 2d 669." See also: *Vaughan v. Commonwealth*, 407 Pa., supra; *Young v. Upper Yoder Twp. School District*, 383 Pa. 320, 118 A. 2d 440.

What makes this case very unusual is (a) that the trial Judge was not a member of the Court en banc (because his term had expired) and (b) the three

---

* There is conflict in the briefs and in the testimony as to whether the dwelling house was situated in this tract.

Judges who sat en banc visited the property and (c) each wrote an Opinion assigning a different value to the property taken. However, after noting the wide disparity between the jury's verdict and the amount of damages awarded by the Board of Viewers, the Court en banc *unanimously* agreed upon the Order of Remittitur or, failing that, the grant of a new trial.

A property owner is not entitled to recover the sentimental value of his home, but only the market value of the property taken. In *Gilleland v. New York State Natural Gas Corporation,* 399 Pa. 181, 159 A. 2d 673, the Court accurately stated the law (page 184) : "The general rule is that what must be assessed is the market value of the property as affected by the taking. This is done by determining the market value of the property as a whole immediately before the taking and unaffected by it and the market value immediately after the taking and affected by it: Johnson's Petition, 344 Pa. 5 (1942), 23 A. 2d 880; Dyer v. Commonwealth, 396 Pa. 524 (1959), 152 A. 2d 760."

We believe, from our study of the record, that there was no clear abuse of discretion or error of law in the final Order which is the subject of this appeal.

Order affirmed.

Mr. Justice Jones and Mr. Justice Eagen dissent.

---

Dissenting Opinion by Mr. Justice Musmanno :

The majority opinion treats this case as an ordinary conventional eminent domain case, but it is not. A court en banc made up of three judges, none of whom sat on the trial and thus had no personal acquaintance with the facts presented at the trial, used its own judgment as to the values of the controverted property before and after taking, ignoring completely the verdict of the jury.

The facts are as follows. Huldah C. Dague, a widow, owned in Washington County 124 acres of

farmland on which she raised cattle and sheep. The land was enriched by six or seven springs and a gas well, which also produced oil. Two buildings broke the skyline of the terrain: a seven-room dwelling and a barn 40 x 52 feet.

For the purpose of constructing a highway, the Commonwealth of Pennsylvania, under the power of eminent domain, condemned part of Mrs. Dague's property, appropriating outrightly 21.5036 acres including the barn and landlocking 66½ acres. The Board of Viewers awarded Mrs. Dague damages in the sum of $18,200. The Commonwealth appealed and at the ensuing trial the jury returned a verdict in the sum of $31,000 for Mrs. Dague. The Commonwealth filed a motion for new trial alleging excessiveness of verdict. The motion was argued before a court en banc which filed three separate opinions and a per curiam order that the plaintiff remit the amount in excess of $18,-200, the amount of the viewers' award, or a new trial would be ordered.

Mrs. Dague refused to accept the remittitur and the court ordered a new trial, from which action the plaintiff appealed to this Court. The trial judge had nothing to do with the order entered by the court below, since his term had expired before the case was disposed of by the court en banc.

Of course, the processes of adjudicating pending litigation must go on regardless of the absence of the original trial judge but the new judge or judges entering into a litigated scene may not arbitrarily cancel out everything that went before, and arbitrarily substitute their own views on the merits of the controversy, wholly apart from the evidence presented.

The three judges who heard the argument en banc took it upon themselves to inspect Mrs. Dague's land and then individually arrive at their own figures (no two of them agreeing on a precise sum), each using

his own sense of values, his own knowledge of real estate, and his own arithmetic. It is commendable that judges should have an excellent opinion of their own capacities, but in that self-faith there must abide always the realization that others, within the periphery of their competence, also have ability to arrive intelligently at their conclusions.

Criticized, maligned and reproached as real estate experts are (unjustly in the eyes of this opinion writer), they are men who have studied their particular field and bring to the courtroom a knowledge and expertness of view which cannot but help the jury in their deliberations. Since the opinions of the real estate experts come before the cross-examining guns of opposing counsel, it cannot be said that the jury's eventual verdict is dictated by an ex parte presentation.

On the other hand, the three judges had no first hand knowledge of the trial. Arbitrarily they decided to discard the evidence presented at the trial and declare the damages to be the exact amount originally determined by the board of viewers. The three judges thus, in effect, cancelled out the jury trial. They, in effect, tried the case de novo without a jury. But if the parties had wanted to proceed in that fashion they could have asked for a trial without jury. In fact, the action of the three judges was even less legal than that one just announced. They tried the case de novo without hearing evidence and without seeing a single witness!

Nor is it evident from the opinion written by the president judge in the court below that the familiarity of the court en banc with the facts was of such superior expertness that it could and should take the place of the trial record. For instance, the president judge says that the trial judge was Judge CUMMINS, although the record clearly shows (23a) that the trial judge was Judge DAVID H. WEINER.

Not only did the court en banc ignore the trial evidence but it found fault with the trial itself, stating that the case was "superficially tried," and that the jurors "adopted the mistaken view that the benefit was to come by direct payment for the land." A reading of the record does not show any superficiality in trial procedure, nor are any trial errors indicated. The charge of the court was an able one and was not excepted to by either side.

On what legal basis then did the three new judges sweep out all the proceedings, and make of themselves a super-board of viewers, a super-jury, and a super-appellate tribunal, in effect taking original evidence which no appellate tribunal does, or has the right to do?

The president judge indicated that he did not think much of widow Dague's home. He described it as a "ramshackle ill-kept, seven room dwelling. This mansion house did not enjoy the benefit of electricity or of water, save what could be brought in by hand pump." Many of the great men of this country were reared in just such a house. Moreover, whatever may have been its lack of modern comforts, there is no need to cite John Howard Payne to the effect that it was home to Mrs. Dague and her family and it was entitled to a window on the side of the road. Under the condemnation by the Commonwealth it has become landlocked, although the president judge's opinion stated that the mansion house remained "undisturbed."

The president judge's opinion speculated on what the jury may have speculated, namely, the possible expansion of the City of Washington and the Township of Amwell. The opinion quotes statistics in this respect, indicating that the city of Washington lost 2735 people in ten years and that Amwell Township gained 287 in the same period of time. There is nothing in the record to show that the jury was influenced by

any such figures. Moreover, they would have been irrelevant in the jury room as they are irrelevant in the disposition of the issue on appeal, which is the loss in market value of the property owned by the plaintiff because of the taking, under eminent domain proceedings, by the Commonwealth.

The court below not only violated established court procedure in the manner in which it disposed of this case, but the president judge made of the case a vehicle for the expression of his views on eminent domain. He said that "we must not let eminent domain proceedings degenerate into a get-rich-quick scheme." There is nothing in the record which would suggest that the widow Dague would get rich by the amount awarded her by the jury for the heavy chopping up of her property by the Commonwealth. If the property-owner is not to get rich when the State lays violent (even if legal) hands on his or her property, neither is the State entitled to seize property without making *just* compensation which, of course, is a matter of constitutional guarantee.

It is also to be observed in this connection that the jurors whose judgment has been so cavalierly treated here are taxpayers themselves and thus would have no reason to loosely hold the purse strings of the Commonwealth when they know that in the last analysis the purse can only be filled by what the taxpayers put into it.

Mrs. Dague owned a nice piece of land on which she pastured her cattle and sheep. The land quenched her thirst with spring water, it generously supplied her with natural gas for illumination, and provided oil to lubricate the well-being of her farm. The State came along and, with its awesome power of eminent domain, chopped up her land, isolated her from the highway, took away over 21 acres, including the indispensable barn, and landlocked 66½ acres. A jury of her peers

awarded her $31,000 for what the State had taken. Three judges who heard no evidence, dictatorially demanded that she give back some of this verdict, modest enough in view of what was commandeered by the State. She refused to agree to the remittitur. She was justified in that refusal. Unfortunately, however, that justification will not restore to her any of the $12,000 sliced away by the court en banc, which slicing has been approved by the Majority of this Court, in spite of the bizarre, extra-juridical, precedent-defying, arbitrary manner in which the slicing was accomplished.