176

Lewis, et al. *v.* Urban Redevelopment Authority of Pittsburgh.

Argued February 22, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard W. Kelly,* with him *William G. Sutter, Jr., H. L. Abrams* and *M. Victoria Geddis,* for appellant.

*Gerald C. Paris,* with him *Frank W. Ittel* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY JUDGE MENCER, April 13, 1972:

The Urban Redevelopment Authority of Pittsburgh (Urban), by declaration of taking filed July 27, 1966, condemned certain real estate in the City of Pittsburgh which was owned by three sisters, Ruth Harrison Lewis, Dorothy Harrison Starr and Charlotte Harrison Hanks (appellees). The property had been previously owned by Charlotte Harrison, mother of the appellees, who had died on December 13, 1960. Charlotte Harrison's last will and testament directed that her estate be divided into four equal parts and distributed, one-fourth to each of her three daughters, Charlotte, Dorothy and Ruth, and one-fourth to the Women's Missionary Society of the Second-Fifth United Presbyterian Church of Pittsburgh.

Dorothy Harrison Starr and Ruth Harrison Lewis were named executrices of their mother's estate and on January 3, 1964 they petitioned the Orphans' Court of Allegheny County for approval of the sale of the real estate, subsequently condemned by Urban, to themselves and their sister, Charlotte Harrison Hanks. Appellees were permitted to purchase the real estate in question, for the sum of $12,000, by order of said Orphans' Court under date of January 16, 1964, and the

Clerk of the Orphans' Court was directed to execute and deliver a deed to appellees.

Urban filed a petition for the appointment of viewers on November 17, 1966, and the appointed viewers thereafter viewed the condemned property on January 10, 1967. A viewers' hearing was conducted on October 18, 1967, at which time testimony was taken on behalf of all parties. On December 27, 1967, the viewers rendered their award in favor of the appellees in the amount of $22,500. From this award Urban and appellees each filed an appeal. A jury trial followed and the jury rendered its verdict in favor of appellees in the amount of $15,000. Appellees filed a motion for a new trial which was granted by the court below.

The sole question presented by this appeal is whether the order of the court below granting the motion for a new trial was a proper exercise of judicial discretion.

Recently, Mr. Justice POMEROY, in *Austin v. Ridge,* 435 Pa. 1, 255 A. 2d 123 (1969), ably discussed the principles of law which apply to this question. We quote pertinent and relevant portions of that opinion.

"The grant of a new trial is within the sound discretion of the trial judge, who is present at the offering of all relevant testimony, but that discretion is not absolute; this Court will review the action of the court below and will reverse if it determines that it acted capriciously or palpably abused its discretion. Burd v. Pennsylvania Railroad Company, 401 Pa. 284, 164 A. 2d 324 (1960) ; Decker v. Kulesza, 369 Pa. 259, 85 A. 2d 413 (1952) ; Bellettiere v. Philadelphia, 367 Pa. 638, 81 A. 2d 857 (1951). This brings us to the central problem, viz., what freedom does the trial court have to review and set aside a jury verdict where the evidence presented to the jury is legally sufficient to sustain that verdict?" (Pages 4 and 5 of 435 Pa.)

"Established doctrine in Pennsylvania dictates that a trial judge abuses his discretion when he grants a

new trial merely because he would have arrived at a different conclusion on the facts of the case than that reached by the jury. Hummel v. Womeldorf, 426 Pa. 460, 464, 233 A. 2d 215 (1967). Where, however, the trial court is convinced that the verdict is against the clear weight of the evidence or that the judicial process has effected a serious injustice, he is under a duty to grant a new trial. Pritchard v. Malatesta, 421 Pa. 11, 13, 218 A. 2d 753 (1966). Our rule may be simply stated; its content is more elusive; and its application will of course require a continuing exercise of judicial sensitivity. The burden of the approach outlined is to treat the legitimacy of the trial court's grant of a new trial as a function of the seriousness of the jury's departure from that result which the trial court feels is dictated by the evidence. Where the case is close and the evidence contradictory, the jury must perforce be given freer rein; but a new trial should be granted and will be upheld where the jury verdict is so opposed to the facts that the judicial conscience cannot let the result stand." (Pages 5 and 6 of 435 Pa.)

"In reviewing the grant or refusal of a new trial to determine whether there has been a palpable abuse of discretion, we must view all the evidence in the record. See Noel v. Puckett, 427 Pa. 328, 235 A. 2d 380 (1967) ; Sherman v. Manufacturers Light & Heat Co., 389 Pa. 61, 68n, 132 A. 2d 255 (1957) ; and Denman v. Rhodes, 206 Pa. Superior Ct. 457 (1965)." (Page 6 of 435 Pa.)

The court below wrote an opinion in which it explained its reasons for granting appellees' motion for a new trial. The court stated that "[d]uring the course of the trial, Ruth Harrison Lewis, one of the plaintiffs, took the stand as a witness for the plaintiffs. On cross-examination the defendant offered the records in the Estate of Charlotte Harrison and proceeded to cross-examine her with regard to them since she acted as a

co-executrix with her sister in that estate. The gist of her testimony in this regard was that she and her sister stated that the property was worth $12,000.00 for the purposes of determining the inheritance tax, that a petition was presented for leave to purchase the property from the Estate of $12,000.00 and that the Church was paid $3,000.00 for its interest. This testimony and the accompanying documents were admitted over the objections of the plaintiffs by the trial Judge. We feel that this was error which seriously prejudiced the plaintiffs."

Our examination of the record discloses appellees, plaintiffs at the trial, did not object to any of the testimony in this regard or to the admission into evidence of Urban's Exhibit J, being the inventory filed in the estate proceedings of Charlotte Harrison, deceased. Appellees did object to the admission into evidence of Urban's Exhibit K, the petition to the Orphans' Court for approval of the sale of the real estate to appellees. The basis of this objection was not that the petition indicated that the petitioners considered the $12,000 price offered for the property "better than can be obtained at public sale" but that the petition set forth information in regard to the net annual rental income of the property for the years 1961 and 1962.

However, it was not error for the trial judge to have admitted the petition for sale into evidence since evidence as to the purchase price of land may be admitted if the time of the purchase is not too remote from the time of the condemnation. The admissibility of such evidence is within the discretion of the trial court and should not be disturbed unless such discretion was grossly abused. *B. & K., Inc. v. Commonwealth*, 398 Pa. 518, 159 A. 2d 206 (1960).

The general rule is that an owner of property involved in condemnation may be cross-examined as to

purchase price, provided the purchase date is not too remote. *Snyder v. Commonwealth,* 412 Pa. 15, 192 A. 2d 650 (1963) ; *Berger v. Public Parking Authority of Pittsburgh,* 380 Pa. 19, 109 A. 2d 709 (1954) ; *Frontage, Inc. v. Allegheny County,* 408 Pa. 165, 182 A. 2d 519 (1962). It was held in *Lutz v. Allegheny County,* 327 Pa. 587, 195 A. 1 (1937), that no abuse of discretion was committed by allowing cross-examination as to purchase price paid seven years prior to condemnation. In *Berkley v. Jeannette,* 373 Pa. 376, 96 A. 2d 118 (1953), it was held that when an owner of property offers himself as a witness at trial, he may be asked what he paid for the property, provided the acquisition was not remote, and this is so whether or not he testified as to the value of the property on direct examination.

Under the facts in this case there was no error in permitting the cross-examination of Ruth Harrison Lewis concerning the purchase price of the property as set forth in the petition or reflected in the inventory. It was likewise not error to admit into evidence the petition and inventory to establish the purchase price paid by appellees for the property. The owner had the right to explain or deny or rebut this evidence and to offer evidence of a change in the neighborhood or an increase in values of properties therein or any other relevant fact. *Berger v. Public Parking Authority of Pittsburgh, supra.*

We have carefully examined the record and find no clear abuse of discretion or any trial error that would justify a new trial. The able charge of the trial judge adequately explained the applicable law to the jury. The jury was correctly instructed as to the effect of the imminence of condemnation in accord with Section 604 of the Eminent Domain Act of 1964[1] and the evi-

_____

[1] Act of June 22, 1964, Special Sess., P. L. 84, Art. VI, §604, 26 P.S. §1-604.

dence pertaining to the proceedings in the administration of the estate of Charlotte Harrison, deceased.

The court below also commented that the verdict was inadequate and that this was another reason for granting a new trial. In *Hilliard v. Anderson*, 440 Pa. 625, 271 A. 2d 227 (1970), it was held that the lower court should state the reasons for reaching the conclusion that a verdict was excessive or inadequate in order that the reviewing court might have the opportunity of intelligently determining whether an abuse of discretion had occurred. Here only the conclusion is stated, without any supporting reason.

In arriving at a just determination of the fair market value, the jury had as criteria the customarily widely disparate opinions of the real estate experts who testified for the respective sides. The opinion of appellees' experts was that the property in question had a value of $60,000 on the date of condemnation, while the opinion of Urban's expert was that the same property at the same time had a valuation of $12,500. It was the province of the jury to weigh the credibility of the valuation witnesses' testimony and to determine what the land taken was fairly worth at the time of the condemnation. *Springer v. Allegheny County*, 401 Pa. 557, 165 A. 2d 383 (1960). In *Morrissey v. Commonwealth, Department of Highways*, 440 Pa. 71, 75, 269 A. 2d 866, 868 (1970), it was stated: "We have indicated many times that the discrepancy in valuation between various experts is properly a factor for the jury's consideration."

Here the board of view awarded appellees $22,500, whereas the jury awarded only two-thirds of that sum, namely $15,000. The award of the board of view is an important circumstance or factor to be considered when a new trial is requested either for inadequacy or excessiveness of the jury's verdict, but it is not controlling.

*Vaughan v. Commonwealth,* 407 Pa. 189, 180 A. 2d 12 (1962). The discrepancy between the valuations of the various experts who testified was a question for the jury to resolve. *Chiorazzi v. Commonwealth,* 411 Pa. 397, 192 A. 2d 400 (1963). Absent reasons, the lower court's conclusion that the verdict was inadequate, even though within the range of the valuations testified by the experts, is insufficient to warrant the granting of a new trial.

For the reasons advanced in this opinion, and after a careful review of the entire record, we are compelled to determine that the court below palpably abused its discretion in granting appellees' motion for a new trial.

Order granting motion for new trial is vacated.