In re: Condemnation by the Redevelopment Authority of the City of Harrisburg of certain parcels of real estate in various Wards of said City in connection with the Cameron-South Harrisburg Flood Project, Project Pa. R-608(c). Carole R. Brown and Donald L. Brown v. Redevelopment Authority of the City of Harrisburg, Appellant.

416

Argued February 2, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*David A. Wion,* with him *Reynolds, Bihl and Schaffner,* for appellant.

*Joseph A. Klein,* for appellees.

OPINION BY JUDGE MENCER, May 22, 1978:

This appeal has been taken by the condemnor from the denial of a motion for a new trial by the Court of Common Pleas of Dauphin County. We are faced with the narrow question of whether the trial judge committed reversible error in sustaining an objection to a question asked of one of the condemnees regarding the purchase price of the property some 3 years and 9 months prior to the condemnation. The objection was sustained because of substantial changes which had occurred to the subject property in the interim, primarily as a result of a major renovation which followed the property's submersion in the flood associated with Hurricane Agnes in June of 1972. Although the question is a very close one, our narrow scope of review compels us to affirm the court below.

On January 3, 1975, the property of Carole and Donald Brown (condemnees) was condemned by the Redevelopment Authority of the City of Harrisburg (condemnor). When the condemnees purchased the triangular-shaped corner property in April 1971 for $35,000,[1] it was being used solely as an outmoded carwash. At the time of its condemnation, the Browns used their land as a fully automatic, full-service car-

---

[1] The record is not entirely clear on this figure since it was placed on the record during a side-bar conference between the attorneys and the court. Condemnees' attorney stated that the purchase price was around $35,000 to $40,000, while condemnor's attorney indicated that it was $35,000. In response to a question from the

wash where gasoline and oil were also sold. Experts for both parties agreed that this was the highest and best use of the subject property.

When Agnes vented her wrath on Harrisburg in 1972, the condemnees' property, located near Paxton Creek, was flooded, and part of the original building on the land was washed away. A major renovation effort followed which included sandblasting, steam cleaning, regrouting, and repainting the building with water-resistant paint. The front and rear doors were also replaced, and new restrooms were installed. All of the plumbing and electrical equipment was replaced, and a special cinder-block equipment room containing the new electrical system was added. Outside, a cashier's shed was constructed, and a new retaining wall was built.

The changeover to a modern facility was completed by the addition of machinery and equipment stipulated by both parties to be worth $102,425 at the time of condemnation. The new, fully automated carwash equipment operated on a conveyor system, with a viewing area where customers could watch their cars being washed. Pumps and storage tanks for gasoline were installed, and the condemnees were selling approximately 30,000 gallons per month at the time of condemnation.

This case was originally heard by a board of viewers. When both sides appealed, a jury trial was held. After a view of the property was taken, four people gave opinions as to its value at the time of condemnation: condemnee Donald Brown and his expert, William Daylor, and condemnor's experts, Arnold Saft and Charles Orberg. Their opinions were roughly as follows:

---

court, the attorney for the condemnor went on to say that "he"—presumably, Donald Brown—did not know whether the purchase price included equipment. N.T. 57.

|  | Brown | Daylor | Saft | Orberg |
|---|---|---|---|---|
| Land | $120,000 | $ 81,800 | $ 38,200 | $ 32,745 |
| Buildings and other improvements | 70,000 | 57,900 | 41,400 | 37,991 |
| Machinery and equipment (by stipulation) | 102,425 | 102,425 | 102,425 | 102,425 |
| Approximate total | $292,000 | $242,000 | $182,000 | $173,000 |

On cross-examination, Donald Brown was asked how much he paid for the property in April of 1971, and the objection to this question was sustained. The jury returned a verdict of $250,000 in favor of the condemnees. When the lower court denied condemnor's motion for a new trial, this appeal was brought.

It has long been the rule in Pennsylvania that a condemnee may not be asked what he paid for the property if the purchase was too remote in time. *See, e.g., Rea v. Pittsburgh & Connellsville Railroad,* 229 Pa. 106, 78 A. 73 (1910). In this case, we are called upon to examine the breadth of the remoteness exception to admissibility. If time were the only relevant factor, the purchase here 3 years and 9 months prior to condemnation could not be considered too remote, and evidence of the purchase price should have been admitted. Here, however, the specific property involved had undergone substantial changes in the period between purchase and condemnation. Therefore, we must decide whether the trial judge manifestly abused his discretion in refusing to admit this evidence, considering these changes in addition to the time period involved.[2]

---

[2] We emphasize that we are not faced here with a case where the issue is simply whether the condemnee's purchase was too remote in time. *See, e.g., Snyder v. Commonwealth,* 412 Pa. 15, 192 A.2d 650 (1963). The condemnor has argued that the fact that both valuation witnesses for the condemnees relied on sales of comparable property around the year of 1971 proves that the court erred in not admitting the 1971 purchase price here. Since the time span was not the determinative factor in the court's ruling, this argument is

Our scope of review from a trial judge's ruling on a new-trial motion is a limited one. In general, we will not disturb the lower court's ruling unless it manifestly abused its discretion or committed an error of law which affected the outcome of the case. *Klick v. Department of Transportation,* 20 Pa. Commonwealth Ct. 627, 342 A.2d 794 (1975). Stated differently, the reviewing court's inquiry is to determine whether the court below acted capriciously or palpably or grossly abused its discretion. *Austin v. Ridge,* 435 Pa. 1, 255 A.2d 123 (1969); *Lewis v. Urban Redevelopment Authority of Pittsburgh,* 5 Pa. Commonwealth Ct. 176, 289 A.2d 774 (1972). In *Levinson v. Commonwealth,* 395 Pa. 613, 615-16, 151 A.2d 453, 455 (1959), Justice MUSMANNO, quoting *Thompson v. American Steel & Wire Co.,* 317 Pa. 7, 11, 175 A. 541, 543 (1934), specifically explained the discretion of the trial judge in allowing into evidence the condemnees' purchase price:

'He [the trial judge] is constantly faced with questions on evidence in their special relation to the issue to be tried. He must deal with such questions in the light of the purposes of the ultimate inquiry and does so in the exercise of what is known as judicial discretion. He should see that nothing relevant is excluded, so long as its admission will not unduly distract the attention of the jury from the main inquiry, by first requiring the ascertainment of an unnecessary quantity of subordinate facts from which the main inferences would ultimately be made. His conclusion or decision on such points will not be

without merit. Nor are we confronted with a situation where some compulsion or lack of volition was involved in the condemnees' purchase. *See, e.g., B. & K., Inc. v. Commonwealth,* 398 Pa. 518, 159 A.2d 206 (1960); *Arndt v. Central Cambria School District,* 7 Pa. Commonwealth Ct. 150, 298 A.2d 682 (1972).

interfered with on appeal save for manifest abuse of power. He must, therefore, determine in the first instance whether evidence which, though logically relevant on the ultimate issue, may nevertheless be excluded, because its general effect on the trial will be to confuse the issue by distracting the attention of the jury from the primary to collateral issues. . . .'

In 1954, the Pennsylvania Supreme Court handed down an important decision in this area of the law in *Berger v. Public Parking Authority of Pittsburgh,* 380 Pa. 19, 109 A.2d 709 (1954). There, the court, in a 4-to-3 decision, held that it was reversible error for the trial judge to refuse to allow cross-examination of the owner on the price at which he had signed an agreement to sell the property some 3 years and 7 months prior to condemnation.[3] The condemnees had argued in part that a large increase in value of properties in the area rendered the evidence inadmissible. Speaking for three members of the court, Justice BELL stated: ''This . . . fact goes only to the weight of the evidence and not to its admissibility; it may have great or little weight depending on the facts of the particular case, but it is clearly admissible.'' *Id.* at 25, 109 A.2d at 711. The dissenting opinion in *Berger* pointed to the broad discretion of the trial judge in this area and reasoned that the basic test was one of remoteness, which includes such things as a substantial increase in land

---

[3] Of course, *Berger* is factually distinguishable from the case at bar in that here we are dealing with what the condemnees paid for the subject property as opposed to the amount for which they were willing to sell it. Although a case may arise where this is a determinative factor, the principles have generally been applied to both types of cases. *See, e.g., Durika v. Derry Township School District,* 415 Pa. 480, 203 A.2d 474 (1964); *Berger, supra; Mitchell Condemnation Case,* 209 Pa. Superior Ct. 288, 228 A.2d 53 (1967).

values in the area, in addition to mere lapse of time prior to condemnation.

In subsequent decisions, the Supreme Court generally followed the language of the *Berger* majority. *See, e.g., Durika, supra* note 3; *Frontage, Inc. v. Allegheny County,* 408 Pa. 165, 182 A.2d 519 (1962); *Buehler v. Commonwealth,* 407 Pa. 330, 180 A.2d 898 (1962); *B. & K., Inc., supra* note 2.[4] In *Frontage,* the lower court was reversed for an abuse of discretion in refusing to allow into evidence the purchase price 2 years and 9 months prior to condemnation. Speaking for a unanimous court, now Chief Justice EAGEN cited *Berger* for the proposition that "intervening changes in the character of the neighborhood and a great increase in value of properties therein between the time of purchase and the time of taking goes only to the weight of the evidence as to the purchase price and not to its admissibility." *Id.* at 167, 182 A.2d at 520.

Nonetheless, several other cases in this period seemed to follow the *Berger* dissent. *See Levinson, supra* (two justices concurring in the result); *Ward v. Commonwealth,* 390 Pa. 526, 136 A.2d 309 (1957) (purchase price 5 years earlier also too remote in time); *Young v. Upper Yoder Township School District,* 383 Pa. 320, 118 A.2d 440 (1955) (per curiam) (purchase price 9½ years earlier also too remote in time). In each of these cases, the court found no error in the trial judge's refusal to allow evidence of the purchase price into evidence, although *Levinson* was reversed on other grounds. Justice MUSMANNO, who dissented

---

[4] The case of *Kelly v. Allegheny County Redevelopment Authority,* 407 Pa. 415, 180 A.2d 39 (1962), in which the court affirmed on the opinion of the lower court, might also be included in this group. However, other language in *Kelly* indicates that purchase price testimony may be excluded because of remoteness "where there have been *important changes in the property* or in the neighborhood where it is located." 180 A.2d at 42 (26 Pa. D. & C. 2d 662, 667) (emphasis added).

in *Berger*, authored the opinions in *Ward* and *Levinson* and stated in *Ward:*

> [C]omparable property in the neighborhood had increased from two to ten times over what it was worth in September, 1949, when Ward acquired title to his property. Thus, the Judge held, and properly so, that 'the circumstances of the purchase were so exceptional that to allow the jury to receive evidence of the amount paid would tend to confuse rather than to assist them in determining the value at the time of the condemnation.'

390 Pa. at 528, 136 A.2d at 310.

With these somewhat divergent lines of cases as background, the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1—101 et seq., was passed. Section 705 of the Code, 26 P.S. §1—705, provides, *inter alia:*

> Whether at the hearing before the viewers, or at the trial in court on appeal:
>
> . . . .
>
> (2) A qualified valuation expert[5] may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following:
>
> (i) The price and other terms of any sale or contract to sell the condemned property or comparable property *made within a reasonable time before or after the date of condemnation.* (Emphasis added, footnote added.)

---

[5] The term "qualified valuation expert" has been held to include any condemnee. *Hoffman v. Commonwealth,* 422 Pa. 144, 221 A.2d 315 (1966). *See also* E. Snitzer, *Pa. Eminent Domain* §§704, 705 (1)-1.5 (1965 and 1976 Supp.).

We find some guidance in interpreting provisions of the Code in the comments of the Joint State Government Commission which drafted the Code, although the language of the Code controls if it is inconsistent with the comment language. *See Gehris v. Department of Transportation*, 471 Pa. 210, 369 A.2d 1271 (1977). The comment to subdivision (2)(i) indicates: "The purpose of this subclause is to emphasize that any sale of or contract or agreement to sell the condemned property or comparable property, *if not too remote in time*, is admissible in evidence, both on direct and cross examination, as both impeaching evidence and as evidence of value." (Emphasis added.) Thus, while Section 705 does not address the scope of the judge's discretion in this area, the comment suggests that, on the question of admissibility, his inquiry should be limited to a determination of whether the sale was temporally remote. Some post-Code cases tend to confirm this. *See, e.g., Lewis, supra; Mitchell, supra* note 3. As we stated in *Lewis,*

> The general rule is that an owner of property involved in condemnation may be cross-examined as to purchase price, provided the *purchase date* is not too remote. Snyder v. Commonwealth, 412 Pa. 15, 192 A.2d 650 (1963); Berger v. Public Parking Authority of Pittsburgh, 380 Pa. 19, 109 A.2d 709 (1954); Frontage, Inc. v. Allegheny County, 408 Pa. 165, 182 A.2d 519 (1962)....
>
> ... The owner had the right to explain or deny or rebut this evidence and to offer evidence of a change in the neighborhood or an increase in values of properties therein or any other relevant fact. Berger v. Public Parking Authority of Pittsburgh, supra. (Emphasis added.)

5 Pa. Commonwealth Ct. at 180-81, 289 A.2d at 777. *See generally* A. Jenkins, *Pa. Trial Evidence Handbook* §7.18 (1974 and 1976 Supp.) ; M. Brown, *Pa. Evidence* 66 (1949 and 1976 Supp.) ; G. Henry, *Pa. Evidence* §30 (1953 and 1972 Supp.).

More recently, however, our decisions have indicated that other factors are relevant in determining the admissibility of the evidence. *Lafferty v. School District of Philadelphia,* 27 Pa. Commonwealth Ct. 80, 365 A.2d 1322 (1976) ; *Klick, supra; Commonwealth v. Fox,* 16 Pa. Commonwealth Ct. 23, 328 A.2d 872 (1974). In all of these cases, we held that the trial judge did not abuse his discretion in excluding evidence of the purchase price. In *Fox,* we noted that real estate prices in the area were sharply rising during the period between purchase and condemnation 3 years and 10 months later, citing *Ward, supra.*

Likewise, in *Klick,* we stated:

The court below is vested with broad discretion in this area, and we accept the explanation of that court when it stated that the evidence was excluded because of: '1) the very real inflation of real estate values in the area, and 2) the changing character of the neighborhood in the interval between the purchase and the condemnation.' Clearly, the purpose behind the remoteness rule is to exclude testimony, which, because of its age would tend not to be reflective of current values. Most assuredly, viewing the interval occurring between the purchase and the condemnation [5 years here] is a consideration for a trial court, but, of equal or greater importance is the possible change occurring during that interval. The court below correctly perceived this, and as such, in no way manifestly abused its discretion. Commonwealth v. Fox, 16 Pa. Commonwealth Ct. 23, 328 A.2d 872 (1974).

20 Pa. Commonwealth Ct. at 632-33, 342 A.2d at 797-98.

And, in *Lafferty,* we cited *Klick* and noted that "the structure had been partially destroyed by fire, otherwise changed and therefore not 'comparable' to its condition five years before." 27 Pa. Commonwealth Ct. at 83-84, 365 A.2d at 1324.

If one common thread runs through the various authorities mentioned above, it is that, however the trial judge ruled on this evidence, the reviewing court seldom finds that he manifestly abused his discretion. In this case, the trial judge has tested the limits of that discretion. A glance at the opinion testimony provides some indication of the closeness of our decision. Since the jury verdict here exceeded the opinions on value of all the experts, the relevance of any evidence relating to the opinion of the condemnee Donald Brown is clear. However, that the condemnees' purchase price was not reflective of the property's value at the time of condemnation is indicated by the fact that even the condemnor's experts valued the land and improvements at over twice the purchase price in 1971. Furthermore, all parties stipulated that the value of machinery and equipment was over $100,000, when the price for the entire property[6] had only been $35,000.

In affirming the lower court here, we reiterate our approval of the approach we used in *Fox, supra, Klick, supra,* and *Lafferty, supra.* At the time we decided *Fox* in 1974, we were faced with two somewhat inconsistent lines of authority in this state. The *Berger-Frontage* approach, which would tend to find an abuse of discretion where the trial judge excludes the condemnee's purchase price due to changes in circumstances other than mere passage of time between purchase and condemnation, is a supportable one. None-

---

[6] *See* note 1, *supra.*

theless, we believe the approach outlined in *Ward, supra, Levinson, supra,* and our recent cases is the more reasoned one. To exclude evidence of the purchase price of the condemned property only where it is remote in time would be to bestow an element of magic on an arbitrary time period. This we will not do. *See Klick, supra.*

The importance of looking beyond the time period between purchase and condemnation is well demonstrated in this case. Part of the original building was washed away, which is not unlike the situation in *Lafferty, supra,* where the structure was partially detroyed by fire. A substantial change in use occurred here from an antiquated carwash to a modern facility which washed cars on an automatic conveyor system, as well as sold gasoline and oil. The accompanying changes in the building, machinery, and equipment were also substantial. Although the situation here is somewhat different from that in *Fox, supra,* and *Klick, supra,* where the change in circumstances involved inflation of property values in the area and the changing character of the neighborhood instead of changes solely in the subject property, this is a reasonable extension of these cases. In both situations, there is a danger of distracting the jury's attention from the main inquiry of determining the present value of the property. *See Levinson, supra.* Finally, we note that the court and the jury had an opportunity to view the premises before the trial judge ruled on the evidence at issue, which is a factor to be considered in deciding whether he manifestly abused his discretion. *See Suburban Land Co. v. Arlington,* 219 Mass. 539, 107 N.E. 432 (1914). *Cf. Commonwealth v. Herold,* 17 Pa. Commonwealth Ct. 148, 330 A.2d 890 (1975) (jury view relevant in deciding whether verdict was excessive).

Our decision here, together with our decisions in *Fox, supra, Klick, supra,* and *Lafferty, supra,* should

not be construed to suggest that the wise trial judge will generally exclude evidence of the condemnee's purchase price. Just the opposite is true. In exercising his discretion in this area, the trial judge should start with the premise that the condemnee's purchase price or other indication of value by him, as logically relevant evidence, should be admitted. However, he must determine whether the probative value of this evidence is outweighed by other factors which would confuse the issue by unduly distracting the jury from its primary inquiry as to the *present* value of the property. Factors to be considered are: (1) the circumstances of the sale or other occurrence involved, *e.g.,* whether it covered the same property, whether it was a voluntary one between a willing and informed seller and buyer, or whether it was made with condemnation in mind; (2) whether it was remote in time from the date of condemnation; (3) what changes had occurred in real estate values in the area or in the general character of the neighborhood in the interim; and (4) what changes had occurred in the subject property. As to (3) and (4), these factors should generally be considered as going to the weight of the evidence, not to its admissibility. The condemnee will generally be able to sufficiently explain the effect of such changes, particularly those relating only to the subject property, once the evidence has been admitted. Nonetheless, if the changes have been extensive, the trial judge may, in his discretion, exclude the evidence to avoid confusion and the distraction of the jury to collateral issues.

Although we might have ruled differently and admitted the evidence, we cannot conclude that the trial judge manifestly abused his discretion in this case. *See Lafferty, supra.*

Order affirmed.

Judge WILKINSON, JR. concurs in the result only.

## Order

And Now, this 22nd day of May, 1978, the order of the Court of Common Pleas of Dauphin County, denying the motion for a new trial by the Redevelopment Authority of the City of Harrisburg, is hereby affirmed.