## Semanderes v. PennDOT

408

*Samuel P. Kamin,* for Semanderes.
*Jeffrey L. Giltenboth,* for PennDOT.

STAISEY, *J.*, April 28, 1989 — In this condemnation case, plaintiff Stavro N. Semanderes has appealed from the court's order of February 21, 1989, denying his motion for post-trial relief. Plaintiff, a painting contractor, was the owner of a property occupied by an office and warehouse building located at 920-922 East Ohio Street on the North Side of Pittsburgh. This property was taken in its entirety by defendant Commonwealth of Pennsylvania, Department of Transportation, because it was needed as the location of a ramp for the East Street Expressway. The date of the taking was May 29, 1985.

Semanderes purchased the subject property in

1979, and commenced remodeling the building. In 1982, however, upon receiving notification from the commonwealth that his property would be condemned, he stopped the remodeling except for finishing his own office area.

The Board of Viewers awarded plaintiff $106,700. At the trial before a jury following appeal to this court, both the valuation experts for the condemnee and for the condemnor used the market data, or comparable sales approach. Plaintiff's expert gave his opinion that the fair market value at the time of condemnation on May 29, 1985 was $175,000. Defendant's expert gave his opinion that the property when taken had a fair market value of $98,000. The jury awarded plaintiff $98,000 and he filed a motion for post-trial relief, which, as indicated, was denied by an order from which an appeal has been taken.

Pursuant to his motion for post-trial relief seeking a new trial, plaintiff briefed and argued four issues. His first point is that the court erred in allowing counsel for defendant to cross-examine his valuation expert on the purchase price of the subject property because (1) the sale occurred almost five and one-half years before condemnation, (2) substantial changes and renovations were made to the property, (3) neither the valuation expert for the condemnee nor the condemnor considered the sale in arriving at his opinion of value as of the date of condemnation, and (4) evidence of the sale price introduced the collateral issue of the profit the condemnee might realize.

Plaintiff's expert was asked on cross-examination to indicate the price that Mr. Semanderes paid for the subject property in November 1979. Plaintiff's objection was overruled and the witness testified that the purchase price was $19,500. The principles

governing admissibility of purchase price in a condemnation case are set forth in *Brown v. Redevelopment Authority of Harrisburg,* 35 Pa. Commw. 415, 386 A.2d 1052 (1978). In *Brown,* Commonwealth Court held that the trial judge did not err in refusing to allow the condemnor to ask the condemnee what he had paid for the condemned property. Although the property, used as a car wash, had been purchased only three years and nine months before condemnation, substantial changes had been made in the interim. Major renovation had followed the property's submersion in a flood associated with a hurricane. In the words of the court:

"A substantial change in use occurred here from an antiquated car wash to a modern facility which washed cars on an automatic conveyor system, as well as sold gasoline and oil. The accompanying changes in the building, machinery, and equipment were also substantial." *Id.* at 427, 386 A.2d at 1058.

Commonwealth Court said that the question was very close, but under these circumstances held that the trial court's ruling did not constitute an abuse of discretion. The court also observed in *Brown* that it is generally true that "however the trial judge ruled on this evidence, the reviewing court seldom finds that he manifestly abused his discretion." *Id.* at 426, 386 A.2d at 1057.

The law of Pennsylvania has generally permitted cross-examination of the condemnee with respect to the purchase price of the condemned land provided the purchase date was not too remote in time. *Brown, supra* at 419, 386 A.2d at 1054; *Klick v. Commonwealth,* 20 Pa. Commw. 627, 631, 342 A.2d 794, 797 (1975). If the purchase date is not considered too remote, the trial court should exercise discretion to exclude evidence of the price only when there has been substantial change in the

subject property or in the character of the neighborhood or the real estate values in the area. With regard to the subject of remoteness, Commonwealth Court in *Brown* said:

"[I]f time were the only relevant factor, the purchase here three years and nine months prior to condemnation could not be considered too remote, and evidence of the purchase price should have been admitted. Here, however, the specific property involved had undergone substantial changes in the period between purchase and condemnation." *Id.* at 419, 386 A.2d at 1054.

*Klick v. Commonwealth, supra,* is another case in which the trial court's exclusion of evidence of the purchase price was upheld. There the property had been purchased only five years before condemnation, but in the interval between purchase and condemnation, the character of the neighborhood had changed significantly and there had been marked inflation of surrounding real estate values. In *Klick,* however, Commonwealth Court addressed itself to the question of whether a purchase date was too remote from the condemnation date in the following terms:

"Our appellate courts have struggled with the remoteness problem before. If any common thread can be derived from these cases, it is the following: Evidence of condemnees' purchase price has been held admissible, and not too remote, if the sale was from three to seven years prior to the condemnation, while evidence of purchase price resulting from a condemnee's purchase of nine or more years prior has been held inadmissible." *Id.* at 631-2, 342 A.2d at 797. (footnotes omitted)

In *Brown v. Redevelopment Authority of Harrisburg, supra,* Commonwealth Court indicated that a trial judge, in exercising his discretion, should start

with the premise that the condemnee's purchase price should be admitted. The court went on to list factors the trial judge should consider in determining whether the probative value of evidence of the purchase price is outweighed by other factors which would confuse or distract the jury. With respect to the last two factors listed, i.e. what changes had occurred in real estate in the area or in the general character of the neighborhood in the interim and what changes had occurred in the subject property, the court observed:

"[T]hese factors should generally be considered as going to the weight of the evidence, not to admissibility. The condemnee will generally be able to sufficiently explain the effect of such changes, particularly those relating only to the subject property, once the evidence [of the purchase price] has been admitted." *Id.* at 428, 386 A.2d at 1058.

Applying the foregoing principles to the present case, it can be seen that the date of purchase, November 27, 1979, would not be considered too remote from the date of condemnation, May 29, 1985, (a period of approximately five and one-half years) to make the purchase price inadmissible on that basis. In addition, the evidence did not show that the property, after having been acquired by plaintiff, was changed so substantially that testimony regarding the purchase price should have been excluded on that basis. While it was established that significant improvements were made, it also appeared that only a fraction of the space in the building had been remodeled before notification of condemnation in 1982 brought an end to such efforts. It should be noted in this regard that the condemnee's architect looked at the property at the

time of taking in 1985, and that, when asked about the condition of the building at that time, testified as follows:

"I would say specific areas, like the first floor, what he did on the first floor was I would say good on the office area. I would say the rest of it, the first floor, he had done very little as far as the warehouse area. I would say it was just fair . . .

"The only thing he did there was clean it up and he did no structural or finishing.

"On the second floor . . . his office area, the public atrium area . . . I would go so far to say it was good, it was acceptable . . .

"[The remainder of the property] was fair. It wasn't good. I would say the best you could say it was fair. He had done some patching, but it was nothing."

The condemnee had a full opportunity to present evidence of the improvements made to the property and their value and, as indicated, did so. The condemnor did not attempt to deny that valuable improvements were made, and defendant's valuation expert gave the property a fair market value at the time of condemnation that was substantially above the price plaintiff paid. After the purchase price was elicited, plaintiff's expert made clear that he did not take that price into consideration when arriving at his opinion of value because of the changes made to the property between purchase and condemnation. Plaintiff's objections to testimony regarding the purchase price properly go to the weight that should be given that evidence by the trier-of-fact rather than to its admissibility.

The second issue raised by plaintiff is that the jury's verdict of $98,000 was inadequate. Plaintiff cites *Redevelopment Authority of Philadelphia v. United Novelty & Premium Co.*, 11 Pa. Commw.

216, 314 A.2d 553 (1973), in which the trial court's grant of the condemnor's motion for a new trial was affirmed by Commonwealth Court, but that case is clearly distinguishable from the present case. There the award of the board of viewers had been $126,000 but the award of the jury was only $88,000. Moreover, Commonwealth Court said: "[T]his is not merely the case of a jury verdict being substantially lower than the award of damages by the board; rather, this is a case where the evidence presented by the condemnor is lacking in substantiality when compared with the evidence presented by the condemnee." *Id.* at 222, 314 A.2d at 557. It was pointed out in *United Novelty* that the authority's only valuation witness relied entirely upon comparable sales; but that some sales were not reasonably comparable, and, with regard to at least one sale, he was completely in error.

Defendant cites *Tinicum Real Estate Holding Corporation v. Commonwealth,* 480 Pa. 220, 389 A.2d 1034 (1978), as the seminal case on alleged inadequacy of verdicts in condemnation cases. In *Tinicum,* PennDOT took for highway purposes 23.63 acres of a 276.85-acre tract. The report of viewers awarded the condemnee $1,144,000 including $900,000 for general damages and $244,000 for severance damages. Both the condemnor and condemnee appealed. The jury awarded the condemnee only $384,300 as damages for the taking. There was, therefore, a $759,700 difference between the board of viewers' award and the jury award. The trial court granted the condemnee a new trial and Commonwealth Court affirmed that decision, but the Pennsylvania Supreme Court reversed, reinstating the verdict of the jury.

In discussing the principles applicable to deciding a motion for a new trial based upon the alleged

inadequacy of the verdict in a condemnation case, the Pennsylvania Supreme Court in *Tinicum* indicated that the amount of the board of viewers' award could be considered but that it is only one factor to be considered and is secondary to a review of the evidence presented at trial. *Id.* at 227, 389 A.2d at 1038. The court also indicated that while a trial court may grant a new trial in an eminent domain case solely on the ground that the verdict was inadequate, it may not properly do so unless it can give specific and valid reasons to show that the verdict did not accurately reflect the actual damages. *Id.* at 230-1, 389 A.2d at 1040. Therefore, a new trial is not warranted unless "the jury's verdict bears 'no rationally assignable relation to any of the testimony.'" *Id.* (quoting *Mazur v. Commonwealth,* 390 Pa. 148, 134 A.2d 669 (1957)).

In the present case, the court would not be able to justify granting a new trial to plaintiff Semanderes based upon alleged inadequacy of the verdict. There was no great disparity between the award of the board of viewers, which was $106,700, and the jury's verdict of $98,000. The commonwealth's valuation expert testified to a fair market value at the time of condemnation of $98,000, so that there was consistency between his testimony and the verdict, and it cannot be said the verdict bears no rationally assignable relation to the testimony. Finally, the condemnor's expert, as indicated, used the comparable sales approach and condemnee did not succeed in showing that the sales he used were not reasonably comparable.

The third issue raised by plaintiff is that the court erred in allowing defendant's valuation expert, John K. Ellis, to testify in violation of the 10-day rule of

section 703(2) of the Eminent Domain Code of 1964, 26 P.S. §1-703(2). The cited statutory provision reads as follows:

"At the trial in court on appeal:

. . .

"If any valuation expert who has not previously testified before the viewers is to testify, the party calling him must disclose his name and serve a statement of his valuation of the property before and after the condemnation and his opinion of the highest and best use of the property before the condemnation and of any part thereof remaining after the condemnation, on the opposing party at least 10 days before the commencement of the trial."

Mr. Ellis did not testify before the viewers. Notice regarding his testimony pursuant to section 703(2) was given to plaintiff on January 13, 1988. This was only nine days before the originally scheduled trial date of January 22, 1988. However, the jury was not picked and trial did not actually begin until the second week of February 1988, significantly beyond the 10-day minimum period statutorily prescribed for notification. Plaintiff has not contended that he suffered any prejudice specifically because of delay in receiving notice. Apparently defendant had to engage Mr. Ellis to testify at trial because the real estate appraiser who testified for the commonwealth before the board of viewers had undergone open heart surgery, and Mr. Ellis did not forward his report to the commonwealth until January 13, 1988. Under these circumstances, and particularly because the statute speaks in terms of "10 days before the commencement of trial" and not in terms of 10 days before the date on which the case is listed

for trial, the court did not think it was contrary to law or otherwise inappropriate to allow Mr. Ellis to testify.

The fourth and final issue raised by plaintiff is that the testimony of defendant's valuation expert, John K. Ellis, should have been stricken because he did not inspect the subject property before the building was demolished and because his methods of determining the physical attributes of the property were inadequate. By the time Mr. Ellis received the assignment from the commonwealth, which was within two or three months of trial, the building on the subject property had already been torn down. At trial, however, this expert indicated what he had done to familiarize himself with the condition of the property at the time of condemnation in 1985. This included his having discussed the property with the commonwealth's former appraiser, his having reviewed photographs of the interior of the building that the appraiser sent to him, and his having read the testimony containing a description of the property given by the owner, Mr. Semanderes, at the hearing before the board of viewers. In addition, Mr. Ellis attended the trial during presentation of plaintiff's case, and testified that he did not hear any testimony concerning the condition of the property from witnesses called by the condemnee that was at odds with what he had learned from the sources he consulted. Moreover, Mr. Ellis, having previously appraised the property next door, was already familiar with the exterior of the building that had been on the subject property.

As the commonwealth's brief points out, section 705(6) of the Eminent Domain Code of 1964 permits an otherwise qualified valuation expert to testify even if he has not inspected the condemned property before it was taken as long as he demon-

418

strates that he has acquired knowledge of the condition of the property at the time of condemnation. It appears that the commonwealth's valuation expert in the present case has satisfied that test, and that he was qualified to testify as to the value of the property even though he was not in the building on the subject property before it was razed. *Hasenflu v. Commonwealth,* 406 Pa. 631, 179 A.2d 216 (1962). The condemnee cross-examined Mr. Ellis on the nature and extent of his knowledge of the condition of the subject property at the relevant time. As in the case of *Cohen v. Redevelopment Authority of Lancaster,* 425 Pa. 441, 229 A.2d 744 (1967), cited by the commonwealth, plaintiff's objections to the testimony of Mr. Ellis only go to the weight to be given to his testimony and to his credibility, which were issues properly left to the jury to resolve.

For the foregoing reasons, plaintiff's motion for post-trial relief seeking a new trial was denied by order of this court dated February 21, 1989, from which an appeal to Commonwealth Court was filed on March 17, 1989.